## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

**FELICIA KOCH,** *et al,*

**Plaintiffs,**

**v.**

**OFFICER DAVID JUBER, Individually and as an officer of Mabel Bassett
Correctional Center,** *et al.,*

**Defendants.**

## DEFENDANTS MILLICENT NEWTON-EMBRY AND CARLA KINGS'
## MOTION TO DISMISS AND BRIEF IN SUPPORT

**JUSTIN P. GROSE, OBA#31073**
**Assistant Attorney General**
**Oklahoma Attorney General's Office**
**Litigation Division**
**313 NE 21st Street**
**Oklahoma City, Oklahoma 73105**
**Telephone: (405) 521-3921   Facsimile: (405) 521-4518**
**justin.grose @oag.ok.gov**
*Attorney for Defendants Millicent Newton-Embry and Carla King*

**December 4, 2013**

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. iii

MOTION TO DISMISS AND BRIEF IN SUPPORT ..................................................... 1

STATEMENT OF THE CASE ............................................................................................ 2

STANDARD OF REVIEW ................................................................................................. 2

ARGUMENT AND AUTHORITIES ................................................................................ 3

PROPOSITION I:

    NEWTON-EMBRY AND KING IN THEIR OFFICAL CAPACITIES,
    AND OKLAHOMA DEPARTMENT OF CORRECTIONS, ARE NOT
    "PERSONS" WITHIN THE STATUTORY DEFINITION OF 42 U.S.C.
    §1983; THEREFORE, THEY CANNOT BE SUED ........................................... 3

PROPOSITION II:

    APPLICABLE STATUTES OF LIMITATIONS BAR SOME
    OF PLAINTIFFS' CLAIMS .................................................................................. 4

PROPOSITION III:

    PLAINTIFFS HAVE NOT ALLEGED SUFFICIENT FACTS
    SUPPORTING PERSONAL PARTICIPATION—EITHER
    DIRECTLY OR THROUGH A SUPERVISORYROLE—ON
    BEHALF OF NEWTON-EMBRY OR KING ...................................................... 9

    A.    Legal Requirements for a Claim of Supervisor Liability ............................ 10

    B.    Lack of Facts for Supervisory Liability as Claimed by
        Plaintiffs ..................................................................................................... 11

**PROPOSITION IV:**

      **PLAINTIFFS HAVE FAILED TO ALLEGE COMPLAINCE
WITH THE OKLAHOMA GOVERNMENTAL TORT CLAIMS
ACT; AMENDMENT WOULD BE FUTILE** ................................................... 13

**PROPOSITION V:**

      **ARTICLE 2, SECTION 9 IS THE APPROPRIATE CONSTITUTIONAL
PROVISION TO SEEK REDRESS UNDER THE OKLAHOMA STATE
CONSTITUTION, NOT ARTICLE 2, SECTION 30; REGARDLESS,
*RESPONDEAT SUPERIOR* LIABILITY IS IMPOSSIBLE IN THIS CASE
BECAUSE THE OFFICERS WERE OUTSIDE THE SCOPE OF THEIR
EMPLOYMENT AS A MATTER OF LAW** ................................................... 16

**PROPOSITION VI:**

      **NEWTON-EMBRY AND KING ARE ENTITLED TO QUALIFIED
IMMUNITY** ......................................................................................... 22

**CONCLUSION** ............................................................................................. 23

**CERTIFICATE OF SERVICE** ..................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*Alabama v. Pugh,*
438 U.S. 781 (1978) ................................................................. 3

*Anderson v. Suiters,*
499 F.3d 1228 (10th Cir. 2007) ........................................................ 14

*Arnold v. Smallwood,*
2012 WL 1657045 (N.D. Okla. May 10, 2012) ............................................. 21

*Ashcroft v. Iqbal,*
566 U.S. 662 (2009) ..............................................................*passim*

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ............................................................... 2, 3

*Bell v. Wolfish,*
441 U.S. 520 (1979) ................................................................. 17

*Bennett v. Passic,*
545 F.2d 1260 (10th Cir. 1976) ....................................................... 10

*Bosh v. Cherokee County Building Authority,*
305 P.3d 994 (Okla. 2013)........................................................*passim*

*Bradley v. J.E. Val-Mejias,*
379 F.3d 892 (10th Cir. 2004) ........................................................ 14

*Brandon v. Holt,*
469 U.S. 464 (1985) .................................................................. 4

*Bryson v. Okla. Cnty. ex rel., Okla. Cnty. Det. Ctr.,*
261 P.3d 627 (Okla. Civ. App. 2011).................................................. 17

*Cory v. Allstate Ins.,*
583 F.3d 1240 (10th Cir. 2009) ....................................................... 13

*Craig v. City of Hobart,*
210 WL 680857 (W.D. Okla. Feb. 24, 2010) ................................................... 18

*Cruse v. Bd. of Cnty. Comm'rs,*
910 P.2d 998 (Okla. 1995) ............................................................................. 14

*Dodds v. Richardson,*
614 F.3d 1185 (10th Cir. 2010) ........................................................... 10, 11, 23

*Edelman v. Bd. of Comm'rs.,*
266 P.3d 660 (Okla. Civ. App. 2011) ............................................................. 15

*Edelman v. Jordan,*
415 U.S. 651 (1974) ......................................................................................... 4

*Fehring v. State Ins. Fund,*
19 P.3d 276 (Okla. 2001) ............................................................................... 17

*Fla. Dep't of Health & Rehabilitative Servs. V. Fla. Nursing Home Ass'n,*
450 U.S. 147 (1981) ......................................................................................... 3

*Fogarty v. Gallegos,*
523 F.3d 1147 (10th Cir. 2008) ..................................................................... 10

*Gaines v. Okla. Dep't of Corrs.,*
973 P.2d 905 (Okla. Civ. App. 1998) ............................................................. 15

*Harmon v. Cradduck,*
286 P.3d 643 (Okla. 2012) ............................................................................. 21

*Harper v. Rudek,*
2013 WL 1688905 (W.D. Okla. Mar. 4, 2013, *report and recommendation adopted by*
2013 WL 1688935 (W.D. Okla. Apr. 18, 2013) ................................................ 6

*Keith v. Koerner,*
707 F.3d 1185 (10th Cir. 2013) ..................................................................... 22

*Kentucky v. Graham,*
473 U.S. 159 (1985) ......................................................................................... 4

iv

*Koch v. Okla. Dep't of Corrs.,*
CV-2012-2781 (Okla. Co. Dec. 18, 2012) ........................................................ 8

*Malley v. Briggs,*
475 U.S. 335 (1986) ...................................................................................... 22

*Meade v. Grubbs,*
841 F.2d 1512 (10th Cir. 1988) ............................................................ 5, 11, 16

*Medina v. State,*
871 P.2d 1379 (Okla. 1993) ..................................................................... 14, 15

*Miskovsky v. Gray,*
109 F.App'x 245 (10th Cir. Aug. 27, 2004) ...................................................... 6

*Morales v. City of Okla. City,*
230 P.3d 869 (Okla. 2010) ............................................................................. 19

*Morris v. Noe,*
672 F.3d 1185 (10th Cir. 2012) .................................................................... 22

*N.H. v. Presbyterian Church (U.S.A.),*
998 P.2d 592 (Okla. 1999) ................................................................. 17, 20, 21

*Nail v. City of Henryetta,*
911 P.2d 914 (Okla. 1996) .......................................................................18, 21

*Okla. Dep't of Corrs. v. Burris.,*
894 P.2d 1122 (Okla. 1995) ......................................................................... 15

*Pearson v. Callahan,*
555 U.S. 223 (2009) ...................................................................................... 22

*Pellegrino v. State ex rel., Cameron Univ. ex rel, Bd. of Regents of the State of Okla.,*
63 P.3d 535 (Okla. 2003) .............................................................................. 13

*Pembaur v. City of Cincinnati,*
475 U.S. 469 (1986) ...................................................................................... 10

*Pennhurst State Sch. & Hosp. v. Halderman,*
465 U.S. 89 (1984) .......................................................................................... 3

*Polk Cnty. v. Dodson,*
454 U.S. 312 (1981) ................................................................................ 10

*Pratt v. GEO Group, Inc.,*
802 F.Supp.2d 1269 (W.D. Okla. 2011) ................................................. 7

*Purvey v. State,*
905 P.2d 770 (Okla. 1995) ..................................................................... 15

*Ridge at Red Hawk, L.L.C. v. Schneider,*
493 F.3d 1174 (10th Cir. 2007) .............................................................. 12

*Robbins v. Oklahoma,*
519 F.3d 1241 (10th Cir. 2008) ........................................................... 9, 10

*Rodebush v. Okla. Nursing Homes, Ltd.,*
867 P.2d 1241 (Okla. 1993) ......................................................... 19, 20, 21

*Serna v. Colo. Dep't of Corrs.,*
455 F.3d 1146 (10th Cir. 2006) .............................................................. 23

*Schovanec v. Archdiocese of Okla. City,*
188 P.3d 158 (Okla. 2008) ....................................................................... 5

*Schneider v. City of Grand Junction Police Dep't,*
717 F.3d 760 (10th Cir. 2013) ................................................................ 11

*Stevenson v. Indep. Sch. Dist. No. I-038,*
393 F.Supp.2d 1148 (W.D. Okla. 2005) ................................................. 14

*Sutherlin v. Indep. Sch. Dist. No. 40,*
2013 WL 1975644 (N.D. Okla. May 13, 2013) .................................. 13, 14

*Thomas v. Casford,*
363 P.3d 856 (Okla. 1961) ....................................................................... 8

*Trujillo v. Williams,*
465 F.3d 1210 (10th Cir. 2006) .............................................................. 10

*Tuffy's v. City of Okla. City,*
212 P.3d 1158 (Okla. 2009) ......................................................... 18, 19, 20, 21

*Washington v. Barry,*
55 P.3d 1036 (Okla. 2002).........................................................................17

*Whitaker v. Hill Nursing Home, Inc.,*
210 P.3d 877 (Okla. Civ. App. 2009) ......................................................6, 7

*White v. City of Tulsa,*
2013 WL 5774018 (N.D. Okla. Oct. 24, 2013) .....................................21, 22

*Will v. Mich. Dep't of State Police,*
491 U.S. 58 (1989) ....................................................................................3, 4

*Williams v. City of Guthrie,*
109 F.App'x 283 (10th Cir. Sept. 8, 2004) ...................................................8

## STATUTES

OKLA. STAT. tit. 12, §§ 91-103...........................................................................6

OKLA. STAT. tit. 12, § 95(A)(1)...........................................................................7

OKLA. STAT. tit. 12, § 95(A)(3)........................................................................5, 6

OKLA. STAT. tit. 12, § 95(A)(4)........................................................................6, 8

OKLA. STAT. tit. 12, § 95(A)(11)....................................................................6, 7, 8

OKLA. STAT. tit. 12, § 100...................................................................................8

OKLA. STAT. tit. 21, § 643.................................................................................19

OKLA. STAT. tit. 21, § 1111(A)(7)......................................................................19

OKLA. STAT. tit. 51, § 151 *et seq.*...............................................................*passim*

OKLA. STAT. tit. 51, § 151(23)(Supp. 1989) ....................................................14

OKLA. STAT. tit. 51, § 155(24) .............................................................14, 15, 16

OKLA. STAT. tit. 51, § 156(B)...............................................................................5

OKLA. STAT. tit. 51, § 157(A) ........................................................... 5

OKLA. STAT. tit. 51, § 157(B) ........................................................... 5

OKLA. STAT. tit. 76, § 18 ................................................................. 7

42 U.S.C. § 1983 ................................................................... *passim*

## RULES

Fed. R. Civ. P. 12(b)(1) .................................................................. 1

Fed. R. Civ. P. 12(b)(6) .................................................................. 1

Fed. R. Civ. P. 15(a)(2) ................................................................. 14

## OTHER

OKLA. CONST. art. II, § 9 ......................................................... 16, 17

OKLA. CONST. art. II, § 30 ................................................. 5, 16, 17, 20

U.S. CONST. amend IV ................................................................ 16

# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

1) FELICIA KOCH, *et al.*,

     Plaintiffs,

v.

             **Case No: CIV-13-750-HE**

1) OFFICER DAVID JUBER, Individually and
 as an officer of Mabel Bassett Correctional
 Center; *et al.*,

     Defendants.

## DEFENDANTS MILLICENT NEWTON-EMBRY, CARLA KING, AND THE OKLAHOMA DEPARTMENT OF CORRECTIONS' MOTION TO DISMISS AND BRIEF IN SUPPORT

Defendants Millicent Newton-Embry, Carla King, and the Oklahoma Department of Corrections ("ODOC") (collectively "Administrative Defendants") respectfully request the Court, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), dismiss them from this cause of action based on the following justifications:

1. Newton-Embry and King in their official capacities, and the Oklahoma Department of Corrections ("ODOC"), are not "persons" for purposes of 42 U.S.C. § 1983;

2. Applicable statutes of limitations bar some of Plaintiffs' claims;

3. Plaintiffs have failed to sufficiently allege personal participation in a constitutional violation on behalf of Newton-Embry and King;

4. Plaintiffs have failed to specifically plead compliance with The Oklahoma Governmental Tort Claims Act ("GTCA");

5. Newton-Embry, King, and ODOC cannot be held liable for the individual, unsanctioned, and criminal acts of David Juber, Jamie Baker, and Gilbert Dildine (collectively "Rape Defendants") because the statutory rape of inmates is outside the scope of employment as a matter of law; and

6. Netwon-Embry and King are entitled to qualified immunity.

## STATEMENT OF THE CASE

Much can be said of the allegations contained in Plaintiffs' Amended Complaint. The Rape Defendants each were involved in the alleged sexual assaults of multiple female inmates at Mabel Bassett Correctional Center ("MBCC") who represent the Plaintiffs in this case. What is lacking from the Amended Complaint, however, is any indication as to how the Administrative Defendants are responsible for any of the violations alleged to have been committed by the Rape Defendants. Newton-Embry is mentioned once as creating or allowing a policy or culture of sexual misconduct. *Am. Compl*. [Doc. 8], at ¶131. King, along with Newton-Embry, is alleged to have been acting pursuant to unidentified "policies, practices, and customs" while in control of the Rape Defendants. *Id.* ¶133. Finally, both are alleged to have been negligent in enforcing "rules, policies and procedures and state law," *id.* ¶142, while also acting in a wanton and malicious manner, *id.* ¶¶144-145.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts

which allow "the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* Where the complaint is brought pursuant to 42 U.S.C. §1983, the

plaintiff must "plead that each government-official defendant, through the official's own

individual actions, has violated the Constitution." *Id.* at 676. The *Twombly* evaluation

requires two prongs of analysis. First, the Court identifies "the allegations in the complaint

that are not entitled to the assumption of truth," that is, those allegations which are legal

conclusions, bare assertions, or merely conclusory. *Id.* at 680. Second, the Court considers

the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.*

at 681. Only if plausibility is found to exist should the case proceed. *Id.* at 679.

<h3 style="text-align:center">ARGUMENT AND AUTHORITIES</h3>

I.   **NEWTON-EMBRY AND KING IN THEIR OFFICIAL CAPACITIES, AND THE ODOC, ARE NOT "PERSONS" WITHIN THE STATUTORY DEFINITION OF 42 U.S.C. § 1983; THEREFORE, THEY CANNOT BE SUED**

An action for the violation of one's civil rights action may be brought under 42

U.S.C. § 1983 against "[e]very person" who, acting under color of law, deprives someone

of a right, privilege, or immunity guaranteed by the United States Constitution and federal

laws. Naming an agency of the state as a defendant actually names the state itself. *See, e.g.,*

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984); *Fla. Dep't of Health &*

*Rehabilitative Servs. v. Fla. Nursing Home Ass'n*, 450 U.S. 147 (1981); *Alabama v. Pugh*,

438 U.S. 781 (1978).

In addition to a state and its agencies, state officials are not "persons" under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989) ("[W]e reaffirm today what we had concluded prior to *Monell* and what some have considered implicit in *Quern*: that a state is not a person within the meaning of § 1983."). Individual-capacity suits "seek to impose personal liability upon a government official for actions he takes under color or state law. Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985) (citations omitted). Because the state is the real party in interest when an official has been subjected to suit, *Edelman v. Jordan*, 415 U.S. 651, 663 (1974), a judgment in a § 1983 suit against an official "in his official capacity" imposes liability against the entity that he represents. *Brandon v. Holt*, 469 U.S. 464, 472 (1985). While "state officials literally are persons," a suit against an official "is no different from a suit against the state itself." *Will*, 491 U.S. at 71 (citations omitted).

It is clear that a suit against a state agency or a person in his or her official capacity is, in fact, a suit against the entity itself, which in turn is a suit against the state. Plaintiffs have sued ODOC, a state agency; Newton-Embry, a state official who at the time was warden at MBCC; and King, a state official serving as deputy warden at MBCC. Based on the U.S. Supreme Court's decision in *Will*, ODOC, Newton-Embry and King in their official capacities, are not "persons" for purposes of 42 U.S.C. § 1983. As a result, an

action cannot be maintained against them therefore they respectfully request this Court dismiss with prejudice any claims brought against them under 42 U.S.C. § 1983.

## II.  APPLICABLE STATUTES OF LIMITATIONS BAR SOME OF PLAINTIFFS' CLAIMS.

A review of Plaintiffs' Amended Complaint seems to reveal three separate theories of liability against the Administrative Defendants: (1) violation of the Eighth and Fourteenth Amendments of the United States Constitution brought pursuant to 42 U.S.C. § 1983, [Doc. 8], at. ¶1; (2) state-law tort claims for negligence,[1] intentional and negligent infliction of emotional distress,[2] and assault and battery, *id.* ¶3; and (3) state-law constitutional claims for violations of article 2, section 30 of the Oklahoma Constitution, *id.* ¶¶35, 43, 51, 58, 68, 76, 84, 97, 105, 113, 123. Though the specificity of factual and legal allegations changes from the Rape Defendants to the Administrative Defendants, *compare id.* pp. 2-25, *with id.* pp. 25-31, which makes it unclear as to what claims are brought against the latter, it is assumed for purposes of this motion that all of the above-stated theories of liability are brought against the Administrative Defendants as well.

Depending on the type of claim, different statutes of limitations apply in this case. First, § 1983 claims are governed by the specific state's statute of limitations regarding

---

[1] Plaintiffs have also asserted negligence per se claims. *See, e.g.*, [Doc. 8], at ¶34.

[2] Oklahoma law does not recognize the independent tort of negligent infliction of emotional distress. *Schovanec v. Archdiocese of Okla. City*, 188 P.3d 158, 174 n.22 (Okla. 2008).

personal injury actions, *Meade v. Grubbs*, 841 F.2d 1512, 1522-23 (10th Cir. 1988), which in this case is two years, OKLA. STAT. tit. 12, § 95(A)(3). Second, claims brought pursuant to the GTCA are limited by statute. A plaintiff has one year to present the claim, OKLA. STAT. tit. 51, § 156(B), after which the state or political subdivision has up to 90 days to approve or deny the claim, *id.* § 157(A). Then, assuming the claim has been denied, the action must be commenced within 180 days. *Id.* § 157(B). In this case Plaintiffs have not pleaded specificity with the GTCA therefore their claims brought pursuant to it must be dismissed. *See infra* Part IV. The third type of claim is an Oklahoma constitutional claim, which requires a separate inquiry.

First, it should be noted that incarceration is not a legal disability in Oklahoma. *Miskovsky v. Gray*, No. 03-6186, 109 F.App'x 245, 249 (10th Cir. Aug. 27, 2004) (unpublished); *Harper v. Rudek*, No. CIV-11-995-HE, 2013 WL 1688905, at *5 (W.D. Okla. Mar. 4, 2013), *report and recommendation adopted by*, 2013 WL 1688935 (W.D. Okla. Apr. 18, 2013). The starting point for a statute-of-limitations inquiry is Chapter 3 of Title 12 of the Oklahoma Statutes, which contains many statutes of limitations. *See* OKLA. STAT. tit. 12, §§ 91-103. Most commonly-used limitations periods are found in § 95. The statute of limitations that should apply to Oklahoma state constitutional claims appears to be a novel issue as it has yet to be discussed by any courts addressing the matter. While § 1983 actions rely upon § 95(A)(3) for their limitations purposes, the desire for uniformity by the federal courts resulting in the use of personal injury statutes of limitation does not apply here. This case involves claims brought under one specific section of the Oklahoma

Constitution, and more specifically, by a group of inmates. Thus, the general limitation governing "action[s] for injury to the rights of another," *id.* § 95(A)(3), need not apply over the more specific limitations periods governing actions filed by inmates for "claims for injury to the rights of another," *id.* § 95(A)(11), or actions for assault and battery, *id.* § 95(A)(4).

Specific over general statutes govern when the two may be construed to apply to the same subject matter. *Whitaker v. Hill Nursing Home, Inc.*, 210 P.3d 877, 880 (Okla. Civ. App. 2009). There, a decedent's personal representative brought suit against a nursing home for the wrongful death of her grandfather. *Id.* at 878. The statutes at issue in *Whitaker* involved Section 95(A)(1) that is "*generally* applicable to breach of contracts," and Title 76, Section 18 that "*specifically* applies to breach of contract actions brought against a health care provider for injury or death arising out of patient care." *Id.* at 880 (emphasis in original). At issue was whether the longer, five-year limitations period governed the action because of the existence of a contract between the nursing home and the decedent, or if the more specific statute governed because it was a medical negligence action. *Id.* Logically, the court held that the more specific statute applied thus barring the claims because they were not brought within the two-year limitations period. *Id.*

Because the suit has been brought by a group of inmates, the more specific statue governing inmate actions must apply. OKLA. STAT. tit. 12, § 95(A)(11). It places a one (1) year limit on "[a]ll actions filed by an inmate or by a person based upon facts that occurred while the person was an inmate in the custody of . . . the State of Oklahoma . . . includ[ing],

but not . . . limited to . . . claims for injury to the rights of another . . . ." *Id.* This previously has been applied to inmate actions that do not fall within the purview of § 1983 or GTCA claims. *See Pratt v. GEO Group, Inc.*, 802 F.Supp.2d 1269, 1270-72 (W.D. Okla. 2011) (holding that one-year limitations period applies to inmate who brought medical negligence claim against prison, as opposed to the more general two-year limitations period for medical negligence).

The statute of limitations for such an action was not addressed in *Bosh v. Cherokee County Building Authority* because the plaintiff quickly brought suit against the jailers and county governmental building authority in just over four months after the incident. 305 P.3d 994, 996 (Okla. 2013). Based on the fact that the excessive force claim is most closely analogous to an assault and battery claim, the one-year statute of limitations for assault and battery claims should apply if the Court does not find the action governed by Section 95(A)(11). *See* OKLA. STAT. tit. 12, § 95(A)(4); *see also Thomas v. Casford*, 363 P.2d 856, 858-59 (Okla. 1961) (applying one-year limitations period for claim that defendant punched plaintiff with his fists).

Three separate statutes of limitations govern this action because of the different theories of liability presented. Every plaintiff in this action alleges they were raped by one of the Rape Defendants during 2012, with the exception of Plaintiff Koch. *See* [Doc. 8], at ¶25. Therefore, all of Koch's claims are barred by all three of the above-described statutes of limitations to the extent they are brought against the Administrative Defendants. The fact that she previously filed suit in Oklahoma County District Court, *see Koch v.*

*Okla. Dep't of Corrs.*, CV-2012-2781 (Okla. Co. Dec. 18, 2012), does not afford her relief

under the Oklahoma savings statute, OKLA. STAT. tit. 12, § 100, because the only party to

that suit named in the new suit is ODOC.[3] Furthermore, ODOC cannot be sued under §

1983, and cannot be held liable under either the GTCA or the Oklahoma Constitution

because the employees were acting outside the scope of their employment. And, as

discussed below in Part IV, Plaintiffs have failed to plead compliance with the GTCA,

which bars all of their state-law negligence claims.


Last, to the extent the Administrative Defendants have been sued for violations of

the Oklahoma Constitution, some of these claims are barred by the one-year limitations

period. Any plaintiff who alleges violations of the Oklahoma Constitution that occurred

before July 19, 2013, cannot bring those claims. Thus, a total bar exists for Amber Blevins

and Heather Weber, *see* [Doc. 8], at ¶¶38, 100, and a partial bar exists for some of the

claims brought by Melissa Nelson and Elly Wright, *see id.* ¶¶87, 108.

### III.  PLAINTIFFS HAVE NOT ALLEGED SUFFICIENT FACTS SUPPORTING PERSONAL PARTICIPATION—EITHER DIRECTLY OR THROUGH A SUPERVISORY ROLE—ON BEHALF OF NEWTON-EMBRY OR KING

The allegations against the Rape Defendants are no doubt clear from the Amended

Complaint. If those events are taken as true, as is required at the motion to dismiss phase,

---

[3] Savings statute only applies if parties named in new lawsuit were named in original. *See Williams v. City of Guthrie*, 109 F.App'x 283, 285-86 (10th Cir. Sept. 8, 2004) (unpublished).

*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008), then it is likely the Rape Defendants were involved in one type of violation or another. When the Amended Complaint switches from the Rape Defendants to the Administrative Defendants, however, there is nothing more than conclusory allegations unsupported by any facts. *See, e.g.*, [Doc. 8], at ¶132, ("The allegations in this paragraph are likely to have additional evidentiary support after a reasonable opportunity for further investigation or discovery."). Aside from the collective use of the term "Administrative Defendants," which makes "it impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed," *Robbins*, 519 F.3d at 1250, there are no specifics as to what policies and procedures, state and federal constitutional provisions, or statutory or common law provisions were violated. Quite simply, no facts are presented that reasonably place ODOC, Newton-Embry, and King on notice as to "*who* is alleged to have done *what* to *whom* . . . ." *Id.*

### A.    Legal Requirements for a Claim of Supervisory Liability.

"Personal participation is an essential allegation in a § 1983 claim." *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) (citations omitted). Individual liability requires personal involvement in the constitutional violation alleged. *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008). The burden is on the plaintiff to establish the "defendant's *direct personal responsibility* for the claimed deprivation of a constitutional right . . . ." *Trujillo v. Williams*, 465 F.3d 1210, 1227-28 (10th Cir. 2006) (emphasis added).

To do so, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Supervisors cannot be held liable merely because of their supervisory positions. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986); *Polk Cnty. v. Dodson*, 454 U.S. 312, 325-26 (1981) (no *respondeat superior* liability in § 1983 actions). This is because "§ 1983 does not recognize a concept of strict supervisor liability; the defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." *Fogarty*, 523 F.3d at 1162. Bare knowledge of subordinates' actions, without more, does not establish liability of a supervisor. *Iqbal*, 556 U.S. at 677 ("[R]espondent believes a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution. We reject this argument."); *Dodds v. Richardson*, 614 F.3d 1185, 1210 (10th Cir. 2010). A claim against a supervisor requires: "(1) personal involvement; (2) causation; and (3) state of mind." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013).

Personal involvement under § 1983—the first element of a claim for supervisory liability—is not established "unless an affirmative link exists between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Meade v. Grubbs*, 841 F.2d 1512, 1527 (10th Cir. 1988). A fourth way to impart personal involvement is the operation of a policy that causes constitutional harm. Policy-maker liability of a supervisor may only exist when: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued

operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199-1200 (10th Cir. 2010) (citation omitted). The *Dodds* requirements essentially wrap up all three requirements for supervisory liability if a policy is involved. But again, a plaintiff must allege "*each* Government-official defendant, through the official's own individual actions, violated the Constitution." *Iqbal*, 556 U.S. at 676.

### B.    Lack of Facts for Supervisory Liability as Claimed by Plaintiffs.

Obviously, neither Newton-Embry nor King personally participated in the alleged rapes. Plaintiffs only allege the Rape Defendants initiated and performed the sexual contact. [Doc. 8], at pp. 7-25. Also absent from the Amended Complaint are any allegations claiming either Newton-Embry or King exercised control over or directed the Rape Defendants to perform the rapes. No specific policy has been identified that caused the complained of constitutional harm. Rather, Plaintiffs generally state Newton-Embry created or allowed a policy or culture of sexual misconduct. *Id.* ¶131. King, along with Newton-Embry, is alleged to have been acting pursuant to unidentified "policies, practices, and customs" while in control of the Rape Defendants. *Id.* ¶133. Also alleged is that they "knew or should have known" of a variety of things, *id.* ¶¶125, 134, 143, but knowledge of course is not enough. *Iqbal*, 556 U.S. at 677. Plaintiffs further allege that the Administrative Defendants (without identifying Newton-Embry or King) knew Defendant Juber had been involved in sending and receiving letters of a sexual nature, [Doc. 8], at

¶127, and that appropriate remedial action would have prevented the assaults, *id.* ¶128. But letters passed between members of opposite sexes cannot lead to the automatic conclusion that a rape will occur. Finally, both are alleged to have been negligent in enforcing "rules, policies and procedures and state law," *id.* ¶142, while also acting in a wanton and malicious manner, *id.* ¶¶144-145. These statements are vague, conclusory, and fail to identify any facts that *caused* the complained of constitutional harm. In fact, the entirety of the § 1983 claim against the supervisors is nothing more than legal conclusions amounting to: something happened so someone is liable. "[T]he mere metaphysical possibility that some plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). Here, there are none.

Plaintiffs' allegations against Defendants Newton-Embry and King are "without supporting factual averments" thus making them "insufficient to state a claim upon which relief can be based." *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009) (citation omitted). There is nothing stated in the Amended Complaint providing any insight as to specifically what Newton-Embry or King did that caused a violation of Plaintiffs' constitutional rights. Based on the insufficiency of the allegations of personal participation, Defendants Newton-Embry and King respectfully request this Court dismiss them from this action in their individual capacities.

13

# IV.    PLAINTIFFS HAVE FAILED TO ALLEGE COMPLIANCE WITH THE OKLAHOMA GOVERNMENTAL TORT CLAIMS ACT; AMENDMENT WOULD BE FUTILE.

It is unclear as to whether Plaintiffs seek to recover under the GTCA, OKLA. STAT. tit. 51, §§ 151-172, because the Act is mentioned nowhere in their Amended Complaint. They do, however, assert claims for negligence and intentional torts under Oklahoma state law. *See, e.g.*, [Doc. 8], at ¶¶3, 139. Some of the Plaintiffs have provided notice of tort claims to the State, but it is currently unclear as to whether those notices fully complied with the GTCA.

It is a pleading requirement that the complaint specifically state compliance with the GTCA because compliance is a jurisdictional prerequisite to filing suit.[4] *Sutherlin v. Indep. Sch. Dist. No. 40*, No. 12-CV-636-JED-PJC, 2013 WL 1975644, at *10 (N.D. Okla. May 13, 2013); *Stevenson v. Indep. Sch. Dist. No. I-038*, 393 F.Supp.2d 1148, 1153 (W.D. Okla. 2005); *Cruse v. Bd. of Cnty. Comm'rs*, 910 P.2d 998, 1004-05 (Okla. 1995). Thus, even if no dispute exists between the parties as to whether the plaintiff has provided notice, dismissal without prejudice is still appropriate. *Sutherlin*, 2013 WL 1975644, at *10. But any amendment to include the Administrative Defendants would be futile because an exemption under the GTCA would bar their state-law tort claims.

---

[4] If the tort claims are only sought against the Rape Defendants, then no notice or pleading of notice would be required since they were no doubt acting outside the scope of their employment. *See Pellegrino v. State ex rel. Cameron Univ. ex rel. Bd. of Regents of the State of Okla.*, 63 P.3d 535, 540 (Okla. 2003) (noting that notice is not required for employees acting outside the scope of their employment).

Rule 15 allows for amendment "when justice so requires. Fed. R. Civ. P. 15(a)(2). The Court can deny amendment, however, when doing so would be futile. *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007). Futility exists when the amended complaint would be subject to dismissal. *Bradley v. J.E. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004) (citation omitted). Here, amendment would be futile because an exemption in the GTCA applies to the "[p]rovision, equipping, operation or maintenance of any prison, jail or correctional facility . . . ." OKLA. STAT. tit. 51, § 155(24). In answering a certified question from this Court, the Oklahoma Supreme Court discussed the broadness of the exemption in *Medina v. State*, 871 P.2d 1379 (Okla. 1993).[5] Negligence on behalf of the State and two prison officials was alleged by the personal representative of a deceased inmate who had ingested a lethal dose of heart medicine belonging to his cell mate. *Id.* at 1381-82. Questions arose as to whether the officials had violated ODOC policy by dispensing a full month's supply of the drug instead of individual doses. *Id.* at 1381 n.2. The plaintiff argued for a narrow construction of the exemption while ODOC claimed it "clearly includes the infinite number of activities that are involved in the day-to-day operation of a prison." *Id.* at 1382. The *Medina* court assigned a broad meaning to the exemption by using the plain and ordinary meanings of the terms used and found it covers:

> [T]he actual stock of (provision) or the supplying of (equipping) all that is
> necessary to the functioning of a penal institution, or the process or manner
> of conducting (operation) the functions of a penal institution, or the process

---

[5] The certified question was: "Does the dispensing of medicine to an inmate in a state penal institution by a state employee come within the exception provided by OKLA. STAT. tit. 51, §155(23) (Supp. 1989)?" *Medina*, 871 P.2d at 1381.

or series of acts necessary to sustaining (maintenance) the proper conditions
of a penal institution."

*Id.* In addition to the plain and ordinary meaning afforded the words of the statute, the court concluded "that the purpose and intent of § 155(2[4]) is to protect the state and political subdivisions from tort liability for loss resulting from the functions of the officers and employees performed in the operation of a penal institution." *Id.* at 1383.

Thus, to the extent Plaintiffs assert negligence claims against ODOC those claims are barred. OKLA. STAT. tit. 51, § 155(24). Other examples that fall within the exemption include operation of prison industries, *Gaines v. Okla. Dep't of Corrs.*, 973 P.2d 905, 907 (Okla. Civ. App. 1998) (inmate lost part of his hand when table saw was inadvertently started), issuance of chain saws to inmates without proper training that results in injury, *Purvey v. State*, 905 P.2d 770, 771 (Okla. 1995), injuries to visitors sounding in premises liability, *Okla. Dep't of Corrs. v. Burris*, 894 P.2d 1122, 1122 (Okla. 1995), and failure to investigate and repair sewer leaks, *Edelen v. Bd. of Comm'rs*, 266 P.3d 660, 664 (Okla. Civ. App. 2011).

Plaintiffs discuss various actions or inactions in which they believe the Administrative Defendants were involved that "breached their duty of care to Plaintiffs . . . ." [Doc. 8], at ¶129. These allegations sound in negligence, which would clearly be exempted under § 155(24). Plaintiffs interpose allegations of "negligence" amongst others of "deliberate indifference" and "violation[s] of their Constitutional rights" making it difficult to discern what claims are actually asserted against which of the Administrative

Defendants. *See id.* pp. 25-31. In any event, to the extent state-law negligence claims are brought against the Administrative Defendants, they are barred by the "[p]rovision, equipping, operation or maintenance of any prison, jail or correctional facility" exemption in the GTCA. OKLA. STAT. tit. 51, § 155(24).

## V. ARTICLE 2, SECTION 9 IS THE APPROPRIATE CONSTITUTIONAL PROVISION TO SEEK REDRESS UNDER THE OKLAHOMA STATE CONSTITUTION, NOT ARTICLE 2, SECTION 30; REGARDLESS, *RESPONDEAT SUPERIOR* LIABILITY IS IMPOSSIBLE IN THIS CASE BECAUSE THE OFFICERS WERE OUTSIDE THE SCOPE OF THEIR EMPLOYMENT AS A MATTER OF LAW

Throughout Plaintiffs' Amended Complaint is referenced violations of article 2, section 30 of the Oklahoma Constitution as to each plaintiff. [Doc. 8], at pp. 9-25. Though not specifically mentioned in the portion of the Amended Complaint referencing the Administrative Defendants, it is assumed this theory of liability is sought against them as well. *See id.* ¶129 (mentioning "Constitutions, statutes and common law of the State of Oklahoma and the United States of America").

Article 2, section 30 is identical to the Fourth Amendment to the U.S. Constitution addressing searches and seizures. *Compare* OKLA. CONST. art. II, § 30, *with* U.S. CONST. amend IV. As with the federal Constitution, that specific provision only applies to pretrial detainees. *See Meade v. Grubbs*, 841 F.2d 1512, 1519 n.4 (10th Cir. 1988) ("We note that the Eighth Amendment does not apply to pretrial detainees.") (citation omitted). It is the Eighth Amendment, or in this case article 2, section 9, that applies to inmates. *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979) (U.S. Constitution); *Bryson v. Okla. Cnty. ex rel.*

*Okla. Cnty. Det. Ctr.*, 261 P.3d 627, 633 (Okla. Civ. App. 2011) (Oklahoma Constitution). The distinction is small but material. Thus, article 2, section 30 is the wrong constitutional provision under which to seek redress in this case because it only applies to pretrial detainees. But even an amendment to include claims under article 2, section 9 as discussed in *Washington v. Barry*, 55 P.3d 1036 (Okla. 2002), would be futile with respect to the Administrative Defendants because the Rape Defendants were acting outside the scope of their employment as a matter of law.

Tort law regarding *respondeat superior* liability in Oklahoma is scattered across many cases involving private employers, as well as government employers when the GTCA is involved. As with private employers, the possibility of the employer being held liable only arises if the employee was acting within the scope of his employment and in furtherance of his duties. *Bosh v. Cherokee Cnty. Bldg. Auth.*, 305 P.3d 994, 998 (Okla. 2013). "Nevertheless, an assertion that an act is accomplished during an employment activity is insufficient to assess liability against the employer *unless the act was done to accomplish the assigned work.*" *N.H. v. Presbyterian Church (U.S.A.)*, 998 P.2d 592, 599 (Okla. 1999) (emphasis added). If, however, the employee is not acting within the scope of his employment, the State cannot be held liable for his conduct because the State is not liable for the acts of employees who are acting in bad faith or with malice. *Fehring v. State Ins. Fund*, 19 P.3d 276, 283 (Okla. 2001) (holding no liability for the State "when, in order to prevail on the particular tort claim sued upon, a plaintiff is required, as a matter of law, to show conduct on the part of a governmental employee that would mandate a determination

the employee was not acting in good faith"). An employee will be in the scope of employment "if engaged in work assigned, or if doing what is proper, necessary and usual to accomplish the work assigned, or doing that which is customary within the particular trade or business." *Bosh*, 305 P.3d at 998.

"As a general rule, it is not within the scope of an employee's employment to commit an assault on a third person." *Nail v. City of Henryetta*, 911 P.2d 914, 918 (Okla. 1996); *see also Craig v. City of Hobart*, 2010 WL 680857, at *4 (W.D. Okla. Feb. 24, 2010) (neither assault nor battery can be committed in good faith by the very fact they require *intentional* conduct.). Two exceptions to this general rule exist: (1) "when the act is one which is fairly and naturally incident to the business and is done while the employee is doing the employer's business"; and (2) if the act is done, "however ill-advisedly, with a view to further the employer's interest or arises out of an emotional response to actions being taken for the employer." *Tuffy's v. City of Okla. City*, 212 P.3d 1158, 1166 (Okla. 2009). But when only one reasonable conclusion can be drawn from the facts as stated by plaintiff is it appropriate for a court to rule on a scope of employment issue as a matter of law. *Nail*, 911 P.2d at 918. So too here.

There is no question that an assault and battery committed against another or the statutory rape of an inmate is an intentional act. It is also apparent from the very nature of the two acts that neither is within the scope of employment of a corrections officer. Where courts have found intentional torts to be within the scope of employment there exist acts

which are much more closely related to the business or actions being performed by the employees.

*Nail* involved a police officer that pushed a handcuffed boy to the ground that resulted in multiple injuries. 911 P.2d at 915. The City of Henryetta argued that the officer acted outside the scope of his employment, *id.* at 916, but the court determined there was a fact question as to whether he intentionally pushed the boy (taking him outside the scope) or was merely negligent, *id.* at 918. Much like other police officer cases, physical altercations with arrestees are "fairly and naturally incident to the business" or "arise[] out of an emotional response to actions being taken for the employer." *Tuffy's*, 212 P.3d at 1166 (officers, while attempting to remove unruly patrons from nightclub, assaulted other customers).[6] The seminal case allowing liability for assaults, if they fall within one of the two exceptions, is *Rodebush v. Okla. Nursing Homes, Ltd.*, 867 P.2d 1241 (Okla. 1993). There, a drunken employee slapped an Alzheimer's patient, who had a known history of being combative, during a bath. *Id.* at 1243. Ultimately, the court determined the drunken employee was acting within the scope of employment because hospital was in the business of taking care of Alzheimer's patients, Alzheimer's patients are known to be combative,

---

[6] Peace officers acting in the scope of their employment and subsequently using excessive force present much different claims than a prison guard who has sex with an inmate. The use of force in an arrest is not always illegal. *Cf.* OKLA. STAT. tit. 21, § 643 (use of force is not unlawful when public officer is arresting someone). The question of how much force was used and the manner in which it was used will determine whether the officer was inside the scope of employment. *Morales v. City of Okla. City*, 230 P.3d 869, 880 (Okla. 2010). Any employee at a correctional institution that has sex with an inmate, however, is always guilty of statutory rape. OKLA. STAT. tit. 21, § 1111(A)(7). Clearly, sexual acts with inmates, which are criminal in nature, are outside the scope of employment.

and the drunken employee was carrying out his assigned task when he slapped the patient. *Id.* at 1246. These cases involve circumstances whereby it is foreseeable that an employee, while engaged in his master's business, may lose his temper and commit an assault. Plus, there is always the possibility that an arrestee will be injured during an arrest.

Nothing changed with the Oklahoma Supreme Court's decision in *Bosh* where jailers assaulted a detainee at the jail's booking desk. 305 P.3d at 996. After the initial assault, the detainee was moved to the showers and then other off-camera areas while the assault continued. *Id.* The detainee suffered injuries from the attack that required surgery. *Id.* Again, though these activities by the jailers were outside the scope of their employment and not something their employer would condone, the Oklahoma Supreme Court—without analysis—concluded that a cause of action existed under article 2, section 30. *Id.* at 1000-01. While it mentioned the police officer misconduct cases in a few footnotes, *id.* at 1000 nn.24-27, it did not elaborate and discuss the assault exceptions discussed in *Tuffy's*. *See id.* at 1000-01. But again, as with the discussion involving police officers, it is conceivable that jailers may use excessive force on a detainee if the jailers become agitated during the booking process, which is "fairly and naturally incident to the business." Not so with raping inmates.

The above cases can be easily distinguished when juxtaposed against the Oklahoma Supreme Court's decision in *N.H.*, 998 P.2d 592. There, a minister who had previous allegations of improper relationships with minors against him sexually molested twelve minors. *Id.* at 597. The minors sued the national organization of the Presbyterian Church

21

under a theory of *respondeat superior*. *Id.* No one else was alleged to have committed the acts. *Id.* Assuming the minister was an agent of the national organization, the court found the acts to be outside the scope of employment as a matter of law. *Id.* at 598-600 ("Ministers should not molest children."). The court found that "[n]o reasonable person would conclude that [the minister's] sexual misconduct was within the scope of employment or in furtherance of the national organization's business," and that the minister "acted for his own personal gratification rather than for any [business] purpose." *Id.* at 599; *see also Harmon v. Cradduck*, 286 P.3d 643, 650 n.21 (Okla. 2012) ("Because Cradduck's alleged theft of the ring would have been an act outside the scope of employment, the resulting tort claim would not be governed by the GTCA, and would not be subject to the notice provisions of the act.") The Rape Defendants were, of course, not hired to perform sexual acts on inmates. *See N.H.*, 998 P.2d at 599.

Undoubtedly, when the act committed by the employee is so outside the scope of employment that no reasonable juror could conclude that it was for the benefit of the employer's business the court must conclude as a matter of law that the employee was acting outside the scope of his employment. *See Nail*, 911 P.2d at 918; *see also Arnold v. Smallwood*, 2012 WL 1657045, at *13 (N.D. Okla. May 10, 2012) (assault and battery cannot be committed in good faith). While the reasoning used in the cases discussing police officer assaults can be followed, it is unimaginable how the rapes of female prison inmates—a crime—could be found to be within the scope of employment. The Rape Defendants' acts can be equated to those of the minister in *N.H.* They are much more

distant than the acts of police officers in *Nail* and *Tuffy's* or the employee in *Rodebush*. Therefore, ODOC cannot be held liable for the Rape Defendants' actions. *See White v. City of Tulsa,* No. 13-CV-128-TCK-PJC, 2013 WL 5774018, at \*3-4 (N.D. Okla. Oct. 24, 2013) (holding actions of police officers that included planting of evidence and falsifying testimony at preliminary hearing precluded *Bosh* claims against employer because those actions were outside the scope of employment).

## VI.    NEWTON-EMBRY AND KING ARE ENTITLED TO QUALIFIED IMMUNITY

Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Once asserted by an official, the burden is shifted to the plaintiff to show: (1) the defendant violated a constitutional right, and (2) the constitutional right was clearly established. *Morris v. Noe*, 672 F.3d 1185, 1191 (10th Cir. 2012). A plaintiff must satisfy both steps, *id.*, but either prong may be addressed first, *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The doctrine balances two important interests: the need to hold liable public officials who exercise their power irresponsibly and "the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. It applies regardless of a mistake of law, a mistake of fact, or a combination. *Id.* As previously discussed in Part III, Plaintiffs suffered no constitutional violation at the hands of either Newton-Embry or King.

The second issue, whether a prison official's deliberate indifference to sexual abuse by prison employees violates the Eight Amendment, is clearly established only to the extent the Tenth Circuit and the U.S. Supreme Court continue to leave the deliberate indifference state-of-mind requirement intact, *see Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013), as opposed to purpose or knowledge as discussed in *Iqbal*, 556 U.S. at 677. After *Iqbal*, however, the Tenth Circuit has wondered if supervisory liability still exists. *Dodds v. Richardson*, 614 F.3d 1185, 1194-95 (10th Cir. 2010) ("Defendant's argument implicates important questions about the continuing vitality of supervisory liability under § 1983 after [*Iqbal*] . . . ."). Indeed, even before *Iqbal*, it was not enough for a plaintiff to show that a supervisor was in charge, but rather plaintiffs had to "establish a deliberate, intentional act by the supervisor to violate constitutional rights." *Id.* at 1195 (quoting *Serna v. Colo. Dep't of Corrs.*, 455 F.3d 1146, 1151 (10th Cir. 2006)). This case provides an opportunity to answer the state-of-mind question; in so doing, the Court should find purpose and intention rather than knowledge or deliberate indifference must be alleged and later proven to hold supervisors liable.

Again, the narrow issue in this case is whether Newton-Embry and King—unaware as to the private, criminal acts of the Rape Defendants—can be held liable in their supervisory capacity for actions which they knew nothing about. Indeed, actions that, once discovered, were dealt with swiftly *on the day of discovery*. Thus, for the same reasons discussed in Part III discussing the lack of sufficient allegations of personal participation, Newton-Embry and King are entitled to qualified immunity on Plaintiffs' claims. *See*

*Dodds*, 614 F.3d at 1194 (holding that supervisory liability is properly addressed as part of the qualified immunity analysis in a § 1983 claim).

## CONCLUSION

The inclusion of the Administrative Defendants in the Amended Complaint is a mere formality. There exist no factual allegations or legal claims as to what they have done or what they should have done to prevent the alleged rapes from occurring—save for conclusory allegations that they violated "policies and procedures" and "federal and state constitutions, as well as common and statutory law." Defendants Millicent Newton-Embry, Carla King, and the Oklahoma Department of Corrections must be dismissed from this cause of action.

Respectfully submitted,

/s/ Justin P. Grose
**RICHARD MANN, OBA #11040**
**JUSTIN P. GROSE, OBA #31073**
Assistant Attorney General
Oklahoma Attorney General's Office
Litigation Division
313 NE 21st Street
Oklahoma City, OK 73105
Telephone: (405) 521-3921
Facsimile: (405) 521-4518
Email: richard.mann@oag.ok.gov
Email: Justin.grose@oag.ok.gov
*Attorney for Defendants Millicent Newton-Embry, Carla King, and the Oklahoma Department of Corrections*

# CERTIFICATE OF SERVICE

   I hereby certify that on this 4th day December 2013, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing. I further that a true and correct copy of the foregoing document was sent via the ECF System to the following persons who are registered participants:

Bradley H. Mallett
Clinton D. Russell
Mark H. Ramsey
Stratton Taylor
TAYLOR BURRAGE FOSTER MALLETT
   DOWNS RAMSEY & RUSSELL
PO Box 309
Claremore, OK 74018-0309
Emails: bmallett@soonerlaw.com
Emails: crussell@soonerlaw.com
Emails: mramsey@soonerlaw.com
Emails: staylor@soonerlaw.com
*Attorneys for Plaintiffs*

David W. Lee
Emily B. Fagan
LEE LAW CENTER, P.C.
6011 N. Robinson Ave.
Oklahoma City, OK 73118-7425
Email: david@leelawcenter.com
Email: email@leelawcenter.com
*Attorneys for Defendant Gilbert Dildine*

/s/ Justin P. Grose
Justin P. Grose