**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| 1) | FELICIA KOCH, | |
| 2) | AMBER BLEVINS, | |
| 3) | ASHLEY BOLDING, | |
| 4) | CANDICE BUCHANAN, | |
| 5) | STACY DIMAS-OLSON, | |
| 6) | NICHOLE ESTES, | |
| 7) | JESSICA JAMES, | |
| 8) | MELISSA NELSON, | |
| 9) | HEATHER WEBER, | Case No. CIV-13-750-HE |
| 10) | ELLY WRIGHT, | |
| 11) | CARMILE SULVETTA, | |

Plaintiffs,

vs.

1) OFFICER DAVID JUBER, Individually and as an officer of Mabel Bassett Correctional Center;
2) JAMIE BAKER, in his individual capacity;
3) GILBERT DILDINE, in his individual capacity;
4) MILLICENT NEWTON-EMBRY, in her individual and Official Capacity;
5) CARLA KING, in her individual and Official Capacity;
6) OKLAHOMA DEPARTMENT OF CORRECTIONS,

Defendants.

## SECOND AMENDED COMPLAINT

COME NOW Plaintiffs, FELICIA KOCH, AMBER BLEVINS, ASHLEY BOLDING, CANDICE BUCHANAN, STACY DIMAS-OLSON, NICHOLE ESTES, JESSICA JAMES, MELISSA NELSON, HEATHER WEBER, ELLY WRIGHT and CARMILE SULVETTA, with their individual causes of action against Defendants, DAVID JUBER, JAMIE BAKER, GILBERT DILDINE, MILLICENT NEWTON-EMBRY, CARLA KING, AND OKLAHOMA DEPARTMENT OF CORRECTIONS. Plaintiffs hereby state and allege the following:

## JURISDICTION AND VENUE

1.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 and the Eighth and Fourteenth Amendments to the United States Constitution.  The Court has jurisdiction of this action under 42 U.S.C. § 1983, 28 U.S.C. § 1343, and 28 U.S.C. § 1331.

2.      The acts and/or omissions giving rise to the Plaintiffs' claims arose while in the custody of the Oklahoma Department of Corrections, Mabel Bassett Correction Center, Pottawatomie County, State of Oklahoma.  Venue in this Court is appropriate under 28 U.S.C. § 1391.

3.      This Court has supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367.

## PARTIES

4.      At all times material hereto, Plaintiffs Felicia Koch, Amber Blevins, Ashley Bolding, Candice Buchanan, Stacy Dimas-Olson, Nichole Estes, Jessica James, Melissa Nelson, Heather Weber, Elly Wright, and Carmile Sulvetta were residents of the State of Oklahoma and inmates at Mabel Bassett Correctional Center ("Mabel Bassett") in Pottawatomie County, Oklahoma, which is operated by the Oklahoma Department of Corrections.

5.      At all times referred to herein, Defendant David Juber ("Juber") was employed as a corrections officer at Mabel Bassett, an Oklahoma Department of Corrections facility, and at all times relevant was acting under the color of law.  The acts and omissions alleged occurred while Defendant Juber was on duty, in uniform, and approved to act on behalf of the State of Oklahoma.

6.      At all times referred to herein, Defendant Jamie Baker ("Baker") was employed as a corrections officer at Mabel Bassett, an Oklahoma Department of Corrections facility, and at all

times relevant was acting under the color of law. The acts and omissions alleged occurred while Defendant Baker was on duty, in uniform, and approved to act on behalf of the State of Oklahoma.

7.     At all times referred to herein, Defendant Gilbert Dildine ("Dildine") was employed as a corrections officer at Mabel Bassett, an Oklahoma Department of Corrections facility, and at all times relevant was acting under the color of law. The acts and omissions alleged occurred while Defendant Dildine was on duty, in uniform, and approved to act on behalf of the State of Oklahoma.

8.     Defendant Millicent Newton-Embry ("Embry") was Warden and ranking officer at Mabel Bassett and at all times relevant, was acting under the color of law. The acts and omissions alleged occurred while Defendant Embry was on duty and approved to act or refrain from acting on behalf of the State of Oklahoma.

9.     Defendant Carla King ("King") was Deputy Warden at Mabel Bassett and at all times relevant, was acting under the color of law. The acts and omissions alleged occurred while Defendant King was on duty and approved to act or refrain from acting on behalf of the State of Oklahoma.

10.     Defendant Oklahoma Department of Corrections was created and exists under the laws of the State of Oklahoma and is a statutorily created state agency charged with the administration and oversight of Mabel Bassett, a prison for women located in Pottawatomie County, Oklahoma.

## **INTRODUCTION**

11.     This lawsuit arises from a series of inmate rapes and assaults committed by Mabel Basset Prison guards from at least 2012 through 2013. Mabel Bassett Prison has earned the status for having the most inmate rapes of any prison in the United States of America. Its status was achieved

by a variety of known and preventable factors and conditions, which were not a concern to the Oklahoma Department of Corrections, the Mabel Basset Wardens or its guards.

12.     Prior to the rapes and assaults at issue, the Oklahoma Department of Corrections and the Mabel Bassett Wardens knowingly hired a guard who had a prior history of sexual assaults in the work place. Another guard was caught writing sexually inappropriate letters to a female inmate at Mabel Bassett, yet he was allowed to remain in his position. In spite of this knowledge, the Oklahoma Department of Corrections and the Wardens allowed these guards to continue their positions, creating and promoting a dangerous environment for the inmates, most of which suffer from severe mental illness.

13.     The Oklahoma Department of Corrections and the Wardens failed to properly install or maintain much of the prison security equipment, including surveillance cameras, which facilitated these rapes. Several rapes complained of herein occurred in areas where security cameras existed but were not functional. Other rapes occurred in areas where known blind spots existed.

14.     The Wardens created, promoted, and implemented policies, procedures, patterns and practices, and customs that created an atmosphere of widespread lawlessness and a corruptive den for sexual depravity where the guards were authorized to prey upon and commit acts of excessive force against the inmates whenever and wherever they chose without meaningful consequence.

## FACTUAL BACKGROUND

15.     The allegations brought in this case are the result of a series of sexual assaults, rapes, forced sodomy, torture and battery brought about by officers and guards at Mabel Bassett in McCloud, Oklahoma over a period of at least several years. These acts were inflicted upon Plaintiffs over this period of time by Defendants Juber, Baker and Dildine who were employed as guards at

Mabel Bassett, and when Defendants Embry and King were employed as administrators at Mabel Bassett.

16.     Previous to any of the causes of action listed below, but during his employment at Mabel Bassett, Defendant Juber admitted to prison officials he engaged in inappropriate contact with female inmates, which involved sending and receiving letters of a sexual nature. Defendants Embry and King conducted an investigation into the allegations of Felicia Koch against David Juber in August through October of 2011.  Despite the known and obvious risks to the inmates' health and safety, Defendants Embry and King allowed Juber to remain in his position whereby he was granted one-on-one access to inmates. Defendants Embry and King had actual knowledge of the obvious risks to the female inmates and failed to implement, alter, or enforce a policy to protect them from harm. Defendants Embry and King knew of and failed to implement, remedy, or alter the glaring deficiencies of the training, supervision, hiring and retention policies and procedures at Mabel Bassett.

17.     David Juber is currently awaiting trial in the District Court of Pottawatomie County, Oklahoma, Case No.CF-2012-68.

18.     Public Records from the Oklahoma Board of Nursing demonstrate that Defendant Baker, prior to his employment at Mabel Bassett, was the subject of several disciplinary issues while working as a nurse, which included instances of sexual misconduct and assaults on patients.

19.     On January 16, 2003, Defendant Baker was the subject of a disciplinary proceeding before the Oklahoma Board of Nursing for failure to administer and appropriately document medication for three (3) patients under his care.

20.     On March 28, 2007, Defendant Baker, again, was the subject of disciplinary proceedings before the Oklahoma Board of Nursing for making inappropriate, sexually explicit statements and assaulting a female patient. A Stipulated Order was issued following the proceeding. His license was placed on probation and he received a severe reprimand.

21.     On May 30, 2007, Defendant Baker was yet again the subject of an Order issued by the Oklahoma Board of Nursing. Baker was required to submit to a psychiatric evaluation, monthly counseling for "sexual misconduct, anger management, and interpersonal relationship" due to the seriousness of the several allegations against him, which included not only inappropriate statements, but also "inappropriate touching of patients and co-workers."

22.     On September 27, 2012, the Oklahoma Board of Nursing suspended Baker's nursing license for jeopardizing lives of patients in his care.

23.     The multiple findings of the Oklahoma Board of Nursing, provided notice to Defendants Embry and King that Baker was highly likely to inflict sexual assault on females if hired as a guard or officer. Defendants Embry and King failed to eliminate Defendant Baker from being considered for employment as a guard or officer at any prison, but specifically at a female prison, and more specifically at Mabel Bassett.

24.     Defendants Juber, Baker and Dildine were able to commit the acts described herein with the cooperation of each other and of other officers and guards.  Defendants Juber, Baker and Dildine were also able to commit the acts more specifically described below due to the acts and cooperation of Defendants Embry and King.

25.     Prior to the incidents giving rise to the facts alleged herein, Defendants Embry and King had a long history of ignoring prison equipment failures, including the prison's video

surveillance cameras, lights, doors, and buzzers that were either improperly installed in a particular area or kept in a state of disrepair. Numerous prison Shift Supervisor Information Sheets confirm these failures.

26.     The failure to properly maintain surveillance cameras had been known by Defendants Embry and King for some time prior to the acts specifically described below. On several occasions when inmates were involved in an altercation or something was stolen, an inmate requested that the cameras be rolled back for viewing. On those occasions, inmates had been told it would be impossible because the cameras were not working properly.

27.     Information gathered from the Pottawatomie County District Attorney's Office in the criminal cases filed against Defendants David Juber and Jamie Baker indicates that Defendants Embry and King not only knew about the malfunctioning cameras, and knew the problem with the cameras were exposing inmates to risks, they also purchased and installed camera covers and/or domes to hide the malfunctioning cameras and cover up the problems. Moreover, these inoperative cameras were located in areas at or near the occurrences of these heinous acts set forth in this Second Amended Complaint.

28.     For many months and/or years, Mabel Basset had an inadequate number of guards/officers to staff the prison, which caused and/or contributed to the multiple assaults, rapes, torture, and other instances that constitute cruel and/or unusual punishment. Defendants Embry and King were well aware of the severe staffing shortages according to the Shift Supervisor Information Sheets.

29.     Defendants Embry and King had a long history of ignoring threats and signs of trouble, refusing to follow and/or establish rules and procedures to prevent sexual attacks, fostering

7

an atmosphere of neglect, failing to properly investigate and educate inmates and officers on proper procedures, and acting with a deliberate indifference to the substantial risk of harm and thereby the safety and rights of the female inmates at Mabel Bassett.

30.     The acts and omissions of Defendants Embry and King created or enhanced the danger of sexual assault and abuse of Plaintiffs, and these egregious incidents demonstrate that disorderly behavior and lawlessness was continuous, systemic, and widespread throughout Mabel Bassett while Defendants Embry and King were wardens.

**ALLEGATIONS OF FELICIA KOCH**
**<u>AGAINST DEFENDANT DAVID JUBER</u>**

31.     Felicia Koch was an inmate confined at the Oklahoma Department of Corrections, Mabel Bassett, and at all relevant times was legally incapable of consent to any sexual act with David Juber.  During Plaintiff Koch's confinement, for a period of several months from December 2010 through May 2011, Defendant David Juber, an employee of Mabel Bassett, sexually assaulted and raped Ms. Koch several times.

32.     On December 7, 2010, Defendant Juber fabricated a reason for Plaintiff Koch to visit the prison nurse in order to remove her from her cell.  After she was out of her cell, Juber then directed her into the downstairs staff restroom in Unit C-3, where inmates were not allowed under any circumstances, and there sexually assaulted and raped Plaintiff Koch and forced her to perform oral sex on him.  Juber then directed Plaintiff Koch to leave the staff restroom and return to her cell, but only after he left first and was able to return to the control room.

33.     On December 20, 2010, Juber fabricated a reason for Plaintiff Koch to visit the prison nurse in order to remove her from her cell.  After she was out of her cell, Juber then directed her into

the downstairs staff restroom in Unit C-3, where inmates were not allowed under any circumstances and there sexually assaulted and raped Plaintiff Koch and forced her to perform oral sex on him. Juber then directed Plaintiff Koch to leave the staff restroom and return to her cell, but only after he left first and was able to return to the control room.

34.     On March 1, 2011, Juber removed Plaintiff Koch from her cell for the stated reason of having her clean the yard control office area. While Plaintiff Koch was performing this activity, Juber raped her.

35.     On May 6, 2011, Juber fabricated a reason for Plaintiff Koch to visit the prison nurse in order to remove her from her cell. After she was out of her cell, Juber then directed her into the downstairs staff restroom in Unit C-3, where inmates were not allowed under any circumstances, and forced Plaintiff Koch to perform oral sex on him. Juber then directed Plaintiff Koch to leave the staff restroom and return to her cell, but only after he left first and was able to return to the control room.

36.     Juber's actions were facilitated by the inaction of other guards, officers and administrators, policies of Mabel Bassett, and the fact that video surveillance cameras, which could or would have prevented such activity, were improperly installed in the area or kept in a state of disrepair with the knowledge of Defendants Embry and King.

37.     In addition to being an inmate who is unable to consent to any sexual activity with any officer or guard, Juber had specific knowledge that Plaintiff Koch had serious mental health issues, was being medicated by prison medical staff for these issues, and was incapable of consenting to sexual activity with Juber.

38.     After the assaults, Plaintiff Koch was promised and/or received preferential treatment for her silence about the forced sodomy and rapes. Koch was allowed to leave her cell during times inmates were to be asleep. Juber abused his position of power as a law enforcement officer and guard at Mabel Bassett and took advantage of Plaintiff Koch's status as a female inmate.

39.     As a direct result of the above-referenced unlawful sexual assault and rape of Plaintiff Koch by Defendant Juber, who acted under color of law while he was an officer of the Oklahoma Department of Corrections, Plaintiff Koch suffered grievous bodily harm, damages, mental anguish and was deprived of her rights to be secure in her person and free from cruel and unusual punishment, in violation of the Eighth and Fourteenth Amendments of the Constitution of the United States, entitling Plaintiff Juber to relief pursuant to the provisions of 42 U.S.C. §§ 1983 and 1988.

40.     The actions of Defendant Juber amount to rape, forcible sodomy, negligence, negligence per se, intentional infliction of emotional distress, and assault and battery.

41.     The actions of Defendant Juber also amount to excessive force in violation of the Oklahoma Constitution, Art. II, §§ 7 and 9 and Plaintiff's rights of due process, all for which Plaintiff is entitled to damages.

42.     The acts of Defendant Juber as set forth above were intentional, unlawful, wanton, malicious, and oppressive, thus entitling Plaintiff Koch to an award of punitive damages.

## ALLEGATIONS OF AMBER BLEVINS
## <u>AGAINST DEFENDANT BAKER</u>

43.     Plaintiff Amber Blevins was an inmate confined at the Oklahoma Department of Corrections, Mabel Bassett Correctional Center, during 2012 and at all relevant times and therefore was legally incapable of consent to any sexual act with Defendant Baker.

44.     On or about July 11, 2012, Defendant Baker removed Plaintiff Blevins from her cell and then shoved her into the staff restroom, where inmates were not allowed under any circumstances. Baker then grabbed her by the hair and hurled her to the ground. Baker told her to "turn around" or he would "get her in trouble." He proceeded to sexually assault and rape Plaintiff Blevins.  Defendant Baker then directed Plaintiff Blevins to leave the staff restroom and return to her cell, but only after he left first and was able to return to the control room.

45.     Defendant Baker's actions were facilitated by the inactions of other guards, officers and administrators, policies of Mabel Bassett, and the fact that video surveillance cameras, which could or would have prevented such activity, were improperly installed in the area or kept in a state of disrepair with the knowledge of Defendants Embry and King.

46.     In addition to being an inmate who is unable to consent to any sexual activity with any officer or guard, Defendant Baker had specific knowledge that Plaintiff Blevins had serious mental health issues, was being medicated by prison medical staff for these issues, and was incapable of consenting to sexual activity with Baker.

47.     Plaintiff Blevins was promised and/or received preferential treatment for her silence about the rape.  Defendant Baker also made threats against Plaintiff Blevins about not being able to see her children again if she refused his advances or failed to remain silent.  Defendant Baker abused his position of power as a law enforcement officer and guard at Mabel Bassett and took advantage of Plaintiff Blevins' status as a female inmate.

48.     As a direct result of the above-referenced unlawful sexual assault and rape of Plaintiff Blevins by Defendant Baker, who acted under color of law while he was an officer of the Oklahoma Department of Corrections, Plaintiff Blevins suffered grievous bodily harm, damages, mental

anguish and was deprived of her rights to be secure in her person and free from cruel and unusual punishment, in violation of the Eighth and Fourteenth Amendments of the Constitution of the United States, entitling Plaintiff Blevins to relief pursuant to the provisions of 42 U.S.C. §§ 1983 and 1988.

49.     The actions of Defendant Baker amount to rape, negligence, negligence per se, intentional infliction of emotional distress, and assault and battery.

50.     The actions of Defendant Baker also amount to excessive force in violation of the Oklahoma Constitution, Art. II, §§ 7 and 9 and Plaintiff's rights of due process, all for which Plaintiff is entitled to damages.

51.     The acts of Defendant Baker as set forth above were intentional, unlawful, wanton, malicious, and oppressive, thus entitling Plaintiff Blevins to an award of punitive damages.

### ALLEGATIONS OF ASHLEY BOLDING
### AGAINST DEFENDANT BAKER

52.     Plaintiff Ashley Bolding was an inmate confined at the Oklahoma Department of Corrections, Mabel Bassett, during 2012 and at all relevant times and, therefore, was legally incapable of consent to any sexual act with Defendant Baker.

53.     On or about September 8th through 10th, 2012, Defendant Baker removed Plaintiff Bolding from her cell and directed her into the upstairs control room staff restroom located in Unit C-1, where inmates were not allowed under any circumstances. When she came up the stairs, Defendant Baker grabbed Plaintiff Bolding, threw her into the restroom, and did not allow her to leave. Baker grabbed Plaintiff Bolding's head and ordered her to perform oral sex on him. Baker proceeded to sexually assault and rape Plaintiff Bolding. Aside from being brutally raped, she sustained contusions to multiple parts of her body, including her hands and knees.

54.     Defendant Baker then directed Plaintiff Bolding to leave the upstairs control room staff restroom and return to her cell, but only after he left first and was able to return to the control room. Defendant Baker's actions were facilitated by the inaction of other guards, officers and administrators, policies of Mabel Bassett, and the fact that video surveillance cameras, which could or would have prevented such activity, were either improperly installed in the area or kept in a state of disrepair with the knowledge of Defendants Embry and King.

55.     In addition to being an inmate who is unable to consent to any sexual activity with any officer or guard, Defendant Baker had specific knowledge that Plaintiff Bolding had serious mental health issues, was being medicated by prison medical staff for these issues, and was incapable of consenting to sexual activity with Baker.

56.     Plaintiff Bolding was promised and/or received preferential treatment for her silence about the rape. Defendant Baker also threatened Plaintiff Bolding that "offenders would be sent to Federal institutions for sexual acts with staff." Defendant Baker also threatened Plaintiff Bolding's family and told her he knew their addresses. Baker also used the prison intercom to "call" Plaintiff Bolding's cell wherein he told her "if anything was to happen, like me going to jail because of you, you know I got people who ride for me." Defendant Baker abused his position of power as a law enforcement officer and guard at Mabel Bassett and took advantage of Plaintiff Bolding's status as a female inmate.

57.     As a direct result of the above-referenced unlawful sexual assault and rape of Plaintiff Bolding by Defendant Baker, committed under color of law while he was an officer of the Oklahoma Department of Corrections, Plaintiff Bolding suffered grievous bodily harm, damages, mental anguish and was deprived of her rights to be secure in her person and free from cruel and unusual

punishment, in violation of the Eighth and Fourteenth Amendments of the Constitution of the United States, entitling Plaintiff Bolding to relief pursuant to the provisions of 42 U.S.C. §§ 1983 and 1988.

58.     The actions of Defendant Baker amount to rape, forcible sodomy, negligence, negligence per se, intentional infliction of emotional distress, and assault and battery.

59.     The actions of Defendant Baker also amount to excessive force in violation of the Oklahoma Constitution, Art. II, §§ 7 and 9 and Plaintiff's rights of due process, all for which Plaintiff is entitled to damages.

60.     The acts of Defendants as set forth above were intentional, unlawful, wanton, malicious, and oppressive, thus entitling Plaintiff Bolding to an award of punitive damages.

## ALLEGATIONS OF CANDICE BUCHANAN
## AGAINST DEFENDANT BAKER

61.     Plaintiff Candice Buchanan was an inmate confined, at all relevant times, at the Oklahoma Department of Corrections, Mabel Bassett, during 2012 and therefore was legally incapable of consent to any sexual act with Defendant Baker.

62.     On or about September 8, 2012, Defendant Baker asked Plaintiff Buchanan to leave her cell.  After she was out of her cell, Defendant Baker then directed her into the downstairs staff bathroom in Unit C-3, where inmates were not allowed under any circumstances, where he sexually assaulted and raped her.  Prior to the rape, Plaintiff Buchanan protested because she was having her period.  Defendant Baker pushed Plaintiff to her knees, causing abrasions, and proceeded to rape Defendant Buchanan on the toilet in spite of her protest.  Defendant Baker then directed Plaintiff Buchanan to leave the staff restroom and return to her cell but only after he was able to return to the control room area.

14

63.     Defendant Baker's actions were facilitated by the inaction of other guards, officers and administrators, policies of Mabel Bassett Correctional Center, and the fact that video surveillance cameras, which could or would have prevented such activity, were improperly installed in the area or kept in a state of disrepair with the knowledge of Defendants Embry and King.

64.     Plaintiff Buchanan was promised and/or received preferential treatment for her silence about the rape. Defendant Baker told her he would "take care of her though the holidays" and agreed to bring her three packs of cigarettes the day following the assault and rape. Defendant Baker abused his position of power as a law enforcement officer and guard at Mabel Bassett and took advantage of Plaintiff Buchanan's status as a female inmate.

65.     As a direct result of the above-referenced unlawful sexual assault and rape of Plaintiff Buchanan by Defendant Baker, committed under color of law while he was an officer of the Oklahoma Department of Corrections, Plaintiff Buchanan suffered grievous bodily harm, damages, mental anguish and was deprived of her rights to be secure in her person and free from cruel and unusual punishment, in violation of the Eighth and Fourteenth Amendments of the Constitution of the United States, entitling Plaintiff Buchanan to relief pursuant to the provisions of 42 U.S.C. §§ 1983 and 1988.

66.     The actions of Defendant Baker amount to rape, negligence, negligence per se, intentional infliction of emotional distress, and assault and battery.

67.     The actions of Defendant Baker also amount to excessive force in violation of the Oklahoma Constitution, Art. II, §§ 7 and 9 and Plaintiff's rights of due process, all for which Plaintiff is entitled to damages.

68. The acts of Defendant Baker as set forth above were intentional, unlawful, wanton, malicious, and oppressive, thus entitling Plaintiff Buchanan to an award of punitive damages.

### ALLEGATIONS OF STACY DIMAS-OLSON
### AGAINST DEFENDANT BAKER

69. Plaintiff Stacy Dimas-Olson was an inmate confined at the Oklahoma Department of Corrections, Mabel Bassett, during 2012 and at all relevant times and therefore was legally incapable of consent to any sexual act with Defendant Baker.

70. On or about September 8th through 10th, 2012, Baker intentionally and deliberately brushed his pelvic area up against the buttocks of Plaintiff Dimas-Olson, thereby sexually assaulting her when she was standing on the upper balcony of Unit C2-C in front of room 206.

71. On or about September 8th through 10th, 2012, Defendant Baker approached Plaintiff Dimas-Olson in her cell with the door closed. Baker opened her cell door and asked her to let him see her breasts. Plaintiff Dimas-OIsen felt compelled to do as he directed and unbuttoned two buttons of her shirt and then pulled her breasts through the top of her bra and exposed them to him. Officer Baker then reached over, groped her breasts and stated "nice."

72. At some time during September 8th through 10th, 2012, Defendant Baker approached Plaintiff Dimas-Olson in her cell in Unit C-2 late at night. Defendant Baker reached out to the Plaintiff, pulled her head towards him, kissed her, unzipped his pants and then pulled out his penis and forced the Plaintiff to perform oral sex on him.

73. Defendant Baker's actions were facilitated by the inaction of other guards, officers and administrators, policies of Mabel Bassett, and the fact that video surveillance cameras, which could or would have prevented such activity, were improperly installed in the area or kept in a state

16

of disrepair with the knowledge of Defendants Embry and King.

74.     In addition to being an inmate who is unable to consent to any sexual activity with any officer or guard, Defendant Baker had specific knowledge that Plaintiff Dimas-Olson had serious mental health issues, was being medicated by prison medical staff for these issues, and was incapable of consenting to sexual activity with Baker.

75.     Plaintiff Dimas-Olson was promised and/or received preferential treatment for her silence about the assault, forced sodomy and rape.  Prior to the sexual assault, Defendant Baker advised Plaintiff Dimas-Olson he was aware another inmate had assaulted her. In an attempt to lure Plaintiff to perform sexual favors on him, Defendant Baker advised her "he wouldn't allow that kind of thing to happen to her again." Defendant Baker abused his position of power as a law enforcement officer and guard at Mabel Bassett and took advantage of Plaintiff Dimas-Olson's status as a female inmate.

76.     As a direct result of the above-referenced unlawful sexual assault and rape of Plaintiff Dimas-Olson by Defendant Baker, committed under color of law while he was an officer of the Oklahoma Department of Corrections, Plaintiff Dimas-Olson suffered grievous bodily harm, damages, mental anguish and was deprived of her rights to be secure in her person and free from cruel and unusual punishment, in violation of the Eighth and Fourteenth Amendments of the Constitution of the United States, entitling Plaintiff Dimas-Olson to relief pursuant to the provisions of 42 U.S.C. §§ 1983 and 1988.

77.     The actions of Defendant Baker amount to rape, forcible sodomy, negligence, negligence per se, intentional infliction of emotional distress, and assault and battery.

17

78.     The actions of Defendant Baker also amount to excessive force in violation of the Oklahoma Constitution, Art. II, §§ 7 and 9 and Plaintiff's rights of due process, all for which Plaintiff is entitled to damages.

79.     The acts of Defendant Baker as set forth above were intentional, unlawful, wanton, malicious, and oppressive, thus entitling Plaintiff Dimas-Olson to an award of punitive damages.

**ALLEGATIONS OF NICHOLE ESTES**
**AGAINST DEFENDANT BAKER**

80.     Plaintiff Nichole Estes was an inmate confined at the Oklahoma Department of Corrections, Mabel Bassett, during 2012 and at all relevant times and therefore was legally incapable of consent to any sexual act with Defendant Baker.

81.     At some time during August 10th through 15th, 2012, Defendant Baker approached Plaintiff Estes in her cell late at night.  Defendant Baker reached out to the Plaintiff, groped her breasts, put his hand under her pajama shorts, and then digitally raped her.

82.     Defendant Baker's actions were facilitated by the inactions of other guards, officers and administrators, policies of Mabel Bassett, and the fact that video surveillance cameras, which could or would have prevented such activity, were improperly installed in the area or kept in a state of disrepair with the knowledge of Defendants Embry and King.

83.     In addition to being an inmate who is unable to consent to any sexual activity with any officer or guard, Defendant Baker had specific knowledge that Plaintiff Estes had serious mental health issues, was being medicated by prison medical staff for these issues, and was incapable of consenting to sexual activity with Baker.

84. Plaintiff Estes was promised and/or received preferential treatment for her silence about the assault and rape. Defendant Baker abused his position of power as a law enforcement officer and guard at Mabel Bassett and took advantage of Plaintiff Estes' status as a female inmate.

85. As a direct result of the above-referenced unlawful sexual assault and rape of Plaintiff Estes by Defendant Baker, committed under color of law while he was an officer of the Oklahoma Department of Corrections, Plaintiff Estes suffered grievous bodily harm, damages, mental anguish and was deprived of her rights to be secure in her person and free from cruel and unusual punishment, in violation of the Eighth and Fourteenth Amendments of the Constitution of the United States, entitling Plaintiff Estes to relief pursuant to the provisions of 42 U.S.C. §§ 1983 and 1988.

86. The actions of Defendant Baker amount to rape, negligence, negligence per se, intentional infliction of emotional distress, and assault and battery.

87. The actions of Defendant Baker also amount to excessive force in violation of the Oklahoma Constitution, Art. II, §§ 7 and 9 and Plaintiff's rights of due process, all for which Plaintiff is entitled to damages.

88. The acts of Defendant Baker as set forth above were intentional, unlawful, wanton, malicious, and oppressive, thus entitling Plaintiff Estes to an award of punitive damages.

### ALLEGATIONS OF JESSICA JAMES
### AGAINST DEFENDANT BAKER

89. Plaintiff Jessica James was an inmate confined at the Oklahoma Department of Corrections, Mabel Bassett, in September 2012, at all relevant times and therefore was legally incapable of consent to any sexual act or conduct by virtue of her status as an inmate.

90. On or about September 8, 2012, Defendant Baker removed Plaintiff James from her

cell and then directed her into the downstairs staff restroom in Unit C-2, where inmates were not allowed under any circumstances, where he then proceeded to sexually assault and rape Plaintiff James while stating, "relax baby, I won't hurt you. I just want to make you feel good." Plaintiff James begged Defendant Baker to stop due to the excruciating pain. Defendant Baker then proceeded to penetrate Plaintiff with his finger. Defendant Baker then directed Plaintiff James to leave the staff restroom and return to her cell, but only after he left first and was able to return to the control room.

91. Defendant Baker's actions were facilitated by the inaction of other guards, officers and administrators, policies of Mabel Bassett, and the fact that video surveillance cameras, which could or would have prevented such activity, were improperly installed in the area or kept in a state of disrepair with the knowledge of Defendants Embry and King.

92. In addition to being an inmate who is unable to consent to any sexual activity with any officer or guard, Defendant Baker had specific knowledge that Plaintiff James had serious mental health issues, was being medicated by prison medical staff for these issues, and was incapable of consenting to sexual activity with Baker.

93. Plaintiff James was promised and/or received preferential treatment for her silence about the assault and rape. Defendant Baker told Plaintiff James that he would "take care of her" and she "would not want for" anything. Defendant Baker abused his position of power as a law enforcement officer and guard at Mabel Bassett and took advantage of Plaintiff James's status as a female inmate.

94. As a direct result of the above-referenced unlawful sexual assault and rape of Plaintiff James by Defendant Baker, committed under color of law while he was an officer of the Oklahoma Department of Corrections, Plaintiff James suffered grievous bodily harm, damages, mental anguish

and was deprived of her rights to be secure in her person and free from cruel and unusual punishment, in violation of the Eighth and Fourteenth Amendments of the Constitution of the United States, entitling Plaintiff James to relief pursuant to the provisions of 42 U.S.C. §§ 1983 and 1988.

95.     The actions of Defendant Baker amount to rape, negligence, negligence per se, intentional infliction of emotional distress, and assault and battery.

96.     The actions of Defendant Baker also amount to excessive force in violation of the Oklahoma Constitution, Art. II, §§ 7 and 9 and Plaintiff's rights of due process, all for which Plaintiff is entitled to damages.

97.     The acts of Defendant Baker as set forth above were intentional, unlawful, wanton, malicious, and oppressive, thus entitling Plaintiff James to an award of punitive damages.

## ALLEGATIONS OF MELISSA NELSON
## AGAINST DEFENDANT BAKER

98.     Plaintiff Melissa Nelson was an inmate confined at the Oklahoma Department of Corrections, Mabel Bassett Correctional Center, during 2012, at all relevant times and therefore was legally incapable of consent to any sexual act with Defendant Baker.  During Plaintiff Nelson's confinement for a period of several months from July through September of 2012, Defendant Baker sexually assaulted and raped Plaintiff Nelson several times.

99.     On or about July 18, 2012, Defendant Baker removed Plaintiff Nelson from her cell for the stated reason of having her store boxes and retrieve a blanket for another inmate. Upon leaving her cell, Defendant Baker directed Plaintiff Nelson to a "chase" closet in Unit C3A, where inmates were not allowed under any circumstances, followed her inside and then closed the door.  He then began kissing the Plaintiff, pulled down her shorts and underwear to her ankles, lifted up her

21

shirt, kissed her breasts, turned her around and raped her. Defendant Baker then directed Plaintiff Nelson to leave the storage "chase" closet and return to her cell. Defendant Baker was still a cadet at this time and should not have been on the floor area.

100. On or about July 30, 2012, Defendant Baker asked Plaintiff Nelson to leave her cell. After she was out of her cell, Defendant Baker directed her into the upstairs control room staff restroom in Unit C-3, where inmates were not allowed under any circumstances, where he sexually assaulted and raped her. Defendant Baker then directed Plaintiff Nelson to leave the staff restroom and return to her cell.

101. On or about August 7, 2012, Defendant Baker asked Plaintiff Nelson to leave her cell. After she was out of her cell, Defendant Baker directed her into the upstairs control room staff restroom in Unit C-3, where inmates were not allowed under any circumstances, where he sexually assaulted and raped her on the toilet in the restroom. Defendant Baker then directed Plaintiff Nelson to leave the staff restroom and return to her cell.

102. Defendant Baker went to the Officer Academy on or about August 13, 2012 for a two week period for training necessary to become a full officer for the Oklahoma Department of Corrections.

103. On or about August 25, 2012, just prior to midnight, Defendant Baker approached Plaintiff Nelson in her cell. He proceeded to kiss her and asked her to come see him later that evening or early morning. On the morning of August 26, 2012, Defendant Baker asked Plaintiff Nelson to leave her cell. After she was out of her cell, Defendant Baker directed her into the upstairs control room staff restroom in Unit C-3, where inmates were not allowed under any circumstances,

where he sexually assaulted and raped her on the toilet in the restroom. Defendant Baker then directed Plaintiff Nelson to leave the staff restroom and return to her cell.

104.    Defendant Baker's actions were facilitated by the inaction of other guards, officers and administrators, policies of Mabel Bassett, and the fact that video surveillance cameras, which could or would have prevented such activity, improperly installed in the area or kept in a state of disrepair with the knowledge of Defendants Embry and King.

105.    In addition to being an inmate who is unable to consent to any sexual activity with any officer or guard, Defendant Baker had specific knowledge that Plaintiff Nelson had serious mental health issues, was being medicated by prison medical staff for these issues, and was incapable of consenting to sexual activity with Baker.

106.    Plaintiff Nelson was promised and/or received preferential treatment, including contraband, for her silence about the rape. Defendant Baker abused his position of power as a law enforcement officer and guard at Mabel Bassett and took advantage of Plaintiff Nelson's status as a female inmate.

107.    As a direct result of the above-referenced unlawful sexual assault and rape of Plaintiff Nelson by Defendant Baker, committed under color of law while he was an officer of the Oklahoma Department of Corrections, Plaintiff Nelson suffered grievous bodily harm, damages, mental anguish and was deprived of her rights to be secure in her person and free from cruel and unusual punishment, in violation of the Eighth and Fourteenth Amendments of the Constitution of the United States, entitling Plaintiff Nelson to relief pursuant to the provisions of 42 U.S.C. §§ 1983 and 1988.

108.    The actions of Defendant Baker amount to rape, forcible sodomy, negligence, negligence per se, intentional infliction of emotional distress, and assault and battery.

109.     The actions of Defendant Baker also amount to excessive force in violation of the Oklahoma Constitution, Art. II, §§ 7 and 9 and Plaintiff's rights of due process, all for which Plaintiff is entitled to damages.

110.     The acts of Defendant Baker as set forth above were intentional, unlawful, wanton, malicious, and oppressive, thus entitling Plaintiff Nelson to an award of punitive damages.

### ALLEGATIONS OF HEATHER WEBER
### AGAINST DEFENDANT BAKER

111.     Plaintiff Heather Weber was an inmate confined at the Oklahoma Department of Corrections, Mabel Bassett, during 2012, at all relevant times and therefore was legally incapable of consent to any sexual act with Defendant Baker.

112.     On or about July 6, 2012, Defendant Baker directed Plaintiff Weber into the staff bathroom, where inmates were not allowed under any circumstances, where he proceeded to sexually assault and rape Plaintiff Weber.

113.     Defendant Baker's actions were facilitated by the inaction of other guards, officers and administrators, policies of Mabel Bassett, and the fact that video surveillance cameras, which could or would have prevented such activity, were either improperly installed in the area or kept in a state of disrepair with the knowledge of Defendants Embry and King.

114.     In addition to being an inmate who is unable to consent to any sexual activity with any officer or guard, Defendant Baker had specific knowledge that Plaintiff Weber had serious mental health issues, was being medicated by prison medical staff for these issues, and was incapable of consenting to sexual activity with Baker.

115.     Plaintiff Weber was promised and/or received preferential treatment for her silence about the rape. Defendant Baker allowed Plaintiff Weber to violate policy by entering through the medium/maximum security gate to visit her mother. She was also allowed to leave her cell during offender "count" to visit other inmates. Baker warned her that disclosing the rape could result in criminal charges against her. Defendant Baker abused his position of power as a law enforcement officer and guard at Mabel Bassett and took advantage of Plaintiff Weber's status as a female inmate.

116.     As a direct result of the above-referenced unlawful sexual assault and rape of Plaintiff Weber by Defendant Baker, committed under color of law while he was an officer of the Oklahoma Department of Corrections, Plaintiff Weber suffered grievous bodily harm, damages, mental anguish and was deprived of her rights to be secure in her person and free from cruel and unusual punishment, in violation of the Eighth and Fourteenth Amendments of the Constitution of the United States, entitling Plaintiff Weber to relief pursuant to the provisions of 42 U.S.C. §§ 1983 and 1988.

117.     The actions of Defendant Baker amount to rape, negligence, negligence per se, intentional infliction of emotional distress, and assault and battery.

118.     The actions of Defendant Baker also amount to excessive force in violation of the Oklahoma Constitution, Art. II, §§ 7 and 9 and Plaintiff's rights of due process, all for which Plaintiff is entitled to damages.

119.     The acts of Defendant Baker as set forth above were intentional, unlawful, wanton, malicious, and oppressive, thus entitling Plaintiff Weber to an award of punitive damages.

**ALLEGATIONS OF ELLY WRIGHT**
**AGAINST DEFENDANT BAKER**

120.     Plaintiff Elly Wright was an inmate confined at the Oklahoma Department of Corrections, Mabel Bassett, in 2012, at all relevant times and therefore was legally incapable of consent to any sexual act with Defendant Baker.

121.     During Plaintiff Wright's confinement for a period of several months from June through September of 2012, Defendant Baker committed sexual assault on numerous occasions, and forcibly sodomized Plaintiff Wright.  Defendant Baker forced Plaintiff Wright to "strip" for him several times. Defendant Baker also aggressively pulled Wright's hair and digitally raped her during one or more of these events. These events took place in her cell, which was located in Unit C-1.

122.     Defendant Baker's actions were only possible due to the inaction of other guards, officers and administrators, policies of Mabel Bassett, and the fact that video surveillance cameras, which could or would have prevented such activity, were either not properly installed in the area or kept in a ongoing state of disrepair with the knowledge of Defendants Embry and King.

123.     Plaintiff Wright was promised and/or received preferential treatment for her silence about the rape.  Defendant Baker abused his position of power as a law enforcement officer and guard at Mabel Bassett and took advantage of Plaintiff Wright's status as a female inmate.

124.     As a direct result of the above-referenced unlawful sexual assault and rape of Plaintiff Wright by Defendant Baker, committed under color of law while he was an officer of the Oklahoma Department of Corrections, Plaintiff Wright suffered grievous bodily harm, damages, mental anguish and was deprived of her rights to be secure in her person and free from cruel and unusual punishment, in violation of the Eighth and Fourteenth Amendments of the Constitution of the United

States, entitling Plaintiff Wright to relief pursuant to the provisions of 42 U.S.C. §§ 1983 and 1988.

125. The actions of Defendant Baker amount to rape, forcible sodomy, negligence, negligence per se, intentional infliction of emotional distress, and assault and battery.

126. The actions of Defendant Baker also amount to excessive force in violation of the Oklahoma Constitution, Art. II, §§ 7 and 9 and Plaintiff's rights of due process, all for which Plaintiff is entitled to damages.

127. The acts of Defendant Baker as set forth above were intentional, unlawful, wanton, malicious, and oppressive, thus entitling Plaintiff Wright to an award of punitive damages.

## ALLEGATIONS OF CARMILE SULVETTA
## AGAINST DEFENDANT DILDINE

128. Plaintiff Carmile Sulvetta was an inmate confined at the Oklahoma Department of Corrections, Mabel Bassett, at all relevant times and therefore was legally incapable of consent to any sexual act with Defendant Dildine.

129. In August or September of 2012, Defendant Gilbert Dildine directed Plaintiff Sulvetta to the Office "bubble" area wherein he proceeded to force her to perform oral sex until ejaculating on her face and mouth.

130. Defendant Dildine's actions were facilitated by the inaction of other guards, officers and administrators, and policies of Mabel Bassett, and the fact that video surveillance cameras, which could or would have prevented such activity, were improperly installed in the area or kept in an state of disrepair with the knowledge of Defendants Embry and King.

131. Upon information and belief, Defendant Dildine had coordinated this act with Defendant Baker, who was working with Dildine on the same shift. Plaintiff believes Baker was

either acting as a lookout or had agreed to make sure no one else was in the area. Such actions were a conspiracy between the guards, which were common and understood by the Defendants, other guards, supervisors, and administrators including Defendants Embry and King.

132. Plaintiff Sulvetta was promised and/or received preferential treatment for her silence. Defendant Dildine abused his position of power as a law enforcement officer and guard at Mabel Bassett and took advantage of Plaintiff Sulvetta's status as a female inmate.

133. As a direct result of the above-referenced unlawful sexual assault of Plaintiff Sulvetta by Defendant Dildine, committed under color of law while he was an officer of the Oklahoma Department of Corrections, Plaintiff Sulvetta suffered grievous bodily harm, damages, mental anguish and was deprived of her rights to be secure in her person and free from cruel and unusual punishment, in violation of the Eighth and Fourteenth Amendments of the Constitution of the United States, entitling Plaintiff Sulvetta to relief pursuant to the provisions of 42 U.S.C. §§ 1983 and 1988.

134. The actions of Defendant Dildine also amount to rape, forcible sodomy, negligence, negligence per se, intentional infliction of emotional distress, and assault and battery.

135. The actions of Defendant Dildine also amount to excessive force in violation of the Oklahoma Constitution, Art. II, §§ 7 and 9 and Plaintiff's rights of due process, all, for which Plaintiff is entitled to damages.

136. The acts of Defendant Dildine as set forth above were intentional, unlawful, wanton, malicious, and oppressive, thus entitling Plaintiff Sulvetta to an award of punitive damages.

## PLAINTIFFS' ALLEGATIONS AGAINST
## DEFENDANTS MILLICENT NEWTON-EMBRY AND CARLA KING

**42 U.S.C. § 1983 Claims Against Defendants Embry and King in their individual capacities**

137.     Plaintiffs adopt and re-assert paragraphs 1-136, as if set forth more fully herein.

138.     Prior to the above-described incidents involving the Plaintiffs, Defendants Embry and King and other administrators of Mabel Bassett had actual knowledge of the histories, patterns, and practices of former Officer David Juber, and of the failure to properly install and maintain video surveillance cameras, which allowed such activities to occur. Both Embry and King also knew that Defendant Baker was reprimanded and/or terminated from his previous employment as a health care professional for, among other things, instances of improper sexual conduct with patients and/or co-workers, yet hired Defendant Baker as a correctional officer, knowing that he would be in charge of vulnerable female inmates suffering from mental health issues, including Plaintiffs. Defendants Embry and King acted with deliberate indifference to the health and safety of the inmates at Mabel Bassett.

139.     Prior to the above-described incidents involving Plaintiffs, Defendants Embry and King knew of previous incidents involving guards and/or other officers of Mabel Bassett, wherein those officers or guards had sexually assaulted female inmates and otherwise engaged in sexual misconduct with female inmates that were being held at Mabel Bassett, and had violated written policies and procedures of Mabel Bassett, state law, the Oklahoma Constitution, and the Eighth Amendment to the United States Constitution.

140.     Defendant Dildine also knew of odd and strange behavior exhibited by Defendant Baker. This included Baker's insistence that Dildine sleep on duty, that Baker be allowed to

personally deliver inmate mail, "which was unusual," and the fact that Baker would spend more time than necessary with the inmates when conducting inmate counts and other assignments. All of this was commonplace/widespread and was custom due to Defendants Embry and King's implementation and/or promulgation of these policies, customs, practices, and regulations or lack of thereof. These customs, policies, procedures, patterns and practices caused constitutional violations to occur, and demonstrates deliberate indifference to the health and safety of the inmates.

141. Defendants Embry and King had knowledge that Defendant Juber had previously been disciplined for inappropriate contact with female inmates, including the sending and receiving of letters of a sexual nature, yet they allowed Defendant Juber to remain in his position where he had one-on-one access to inmates.

142. If Defendants Embry and King had taken appropriate preventive and remedial action regarding the Prison's polices and procedures, including the hiring and retention of Defendants Juber, Baker and Dildine, the assaults on the Plaintiffs would not have occurred. These acts and/or omissions by Defendants Embry and King were a separate violation of Plaintiffs' constitutional rights and a direct or contributing cause of the heinous acts specified above.

143. Defendants Embry and King acted with deliberate indifference to Plaintiffs, by (1) failing to hire and provide a sufficient and adequately trained staff at Mabel Bassett on the days Plaintiffs were attacked by Defendant guards; (2) failing to properly screen and segregate Plaintiffs from the guards, despite the Defendant guards' specific threats to Plaintiffs and the guards' significant history of violence and sexually exploitative behavior; (3) failing to provide and establish reasonable and acceptable safety procedures; (4) failing to provide and establish necessary and appropriate security measures; (5) failing to develop and implement a reasonable and acceptable

classification system and corresponding housing plan at Mabel Bassett; (6) failing to adopt and/or enforce reasonable and acceptable policies and procedures relating to the intervention of Mabel Bassett staff to prevent the attacks on Plaintiffs by Defendants Baker, Dildine, and Juber; and (7) by otherwise acting or failing to act in other manners that are in contravention of the Constitutions, statutes and common law of the State of Oklahoma and the United States of America.

144.     Plaintiffs further allege individually and collectively that Defendants Embry and King had general knowledge which could have and should have been acted upon which would have prevented the sexual attacks on Plaintiffs including the following:

A.     The Mabel Bassett staff was not vigilant in establishing a safe environment for offenders entrusted to their care and custody;

B.     The mere numbers of inmates raped at Mabel Bassett before investigative actions brought about a halt to these criminal acts is indicative that rape at Mabel Bassett was systemic; and

C.     The number of inmates raped at Mabel Bassett is reflective of a correctional setting without any security or with a chronically defective system of security.

145.     The facts alleged herein show that Defendants Embry and King created and promoted a policy or culture of widespread sexual misconduct, they failed to take reasonable measures to abate the culture of sexual misconduct, and they were deliberately indifferent to this substantial risk of harm to female inmates.

146.     At all times relevant to this Complaint, Defendants Juber, Baker and Dildine were employed by Mabel Basset and the Oklahoma Department of Corrections and were acting under the supervision, direction, and control of Defendants Embry and King and were acting pursuant to the

policies, practices, and customs of Defendants Embry and King, Mable Bassett, and the Oklahoma Department of Corrections.

147.    Defendants Embry and King knew that Mabel Bassett had inadequate tracking and/or monitoring of prisoners being housed, escorted, and working at the Prison, thus creating and promoting a den for constitutional and statutory violations as well as violations of written rules and procedures.

148.    When the above-described events were reported to Defendants Embry and King, instead of rendering the medical and mental health attention necessary to Plaintiffs, Defendants Embry and King subjected Plaintiffs to harsh and unnecessary interrogation tactics from Internal Affairs, punished and retaliated against Plaintiffs by mocking, harassing, belittling, intimidating, and filing unwarranted disciplinary claims against Plaintiffs.

149.    Defendants Embry and King failed to adequately train, supervise, and discipline the guards, officers, jailers and others working at Mabel Bassett so as to prevent the unlawful sexual assaults and rapes of the Plaintiffs.

150.    Defendants Embry and King's failure to train, supervise and discipline amounts to deliberate indifference to the rights of inmates of the Oklahoma Department of Corrections, including the Plaintiffs, and created an unreasonable risk of harm and danger to Plaintiffs. This failure created and encouraged ongoing inmate assaults and rapes inflicted by the staff of the Oklahoma Department of Corrections at Mabel Bassett.

151.    Defendants Embry and King's deliberate indifference to Plaintiff's' health and safety caused and/or contributed to the assaults and rape of the Plaintiffs, their consequential injuries and damages, and violation of their state and federal Constitutional rights.

152.	Defendants Embry and King are legally responsible for the assaults and rapes of Plaintiffs and their consequential injuries and damages by acting jointly with Juber, Baker and Dildine, through creating, implementing, promoting, authorizing or allowing policies, plans, customs, patterns and practices that led to the unlawful conduct by the prison staff, and the failure of Defendants Embry and King to take action to prevent the unlawful conduct and their refusal to initiate and maintain adequate training and/or supervision of the prison staff.  This constitutes deliberate indifference to the Plaintiffs' rights.

153.	As a direct result of the acts of Defendants Embry and King, Plaintiffs suffered injuries, and severe mental anguish in connection with the deprivation of their Constitutional rights guaranteed by the Eighth and Fourteenth Amendments to the Constitution of the United States.

154.	Defendants Embry and King acted with deliberate indifference by failing to enforce and/or implement the written rules, policies and procedures and state law governing the operation of prisons within the State of Oklahoma.  Defendants Embry and King had a duty to the public and to Plaintiffs in particular to enforce and uphold proper practices and procedures in the operation of the Oklahoma Department of Corrections and Mabel Bassett.  Such deliberate indifference caused or contributed to the injuries and assaults suffered by Plaintiffs.

155.	Defendants Embry and King also failed to protect Plaintiffs from the criminal acts of other inmates.  Plaintiffs were repeatedly assaulted by other inmates throughout the course of the investigation of the acts of Defendants Juber, Baker and Dildine.  Defendants Embry and King knew of the dangers that existed to Plaintiffs and failed to keep inmates from causing them further injuries.

156.	The acts of Defendants Embry and King as set forth above were wanton, malicious, and oppressive, thus entitling Plaintiffs to an award of punitive damages.

33

**Respondeat Superior Liability Under Art. II, § 9 of the
Oklahoma State Constitution Against Defendants
Oklahoma Department of Corrections and Wardens Embry and King**

157.    Plaintiffs adopt and reassert the allegations of paragraphs 1-156 as if set forth more fully herein.

158.    Defendants Embry, King, and the Oklahoma Department of Corrections put Defendants Juber, Dildine, and Baker in a position to employ force, punishment, power and control against prison inmates and from which this force, punishment, power and control was used, Defendants Embry, King, and the Oklahoma Department of Corrections were benefitted.

159.    Defendants Embry, King, and the Oklahoma Department of Corrections hired and retained prison guards with work-related histories of sexual misconduct and had direct knowledge of the guards' propensities to create specific dangers towards Mabel Bassett inmates.

160.    The rapes and assaults of Plaintiffs committed by Defendants Juber, Baker, and Dildine were acts of force, punishment, power, control and dominance, falling within the scope of their duties for which they were hired.

161.    Both Defendants Embry and King created, promoted, and implemented policies, procedures, patterns and practices, and customs that created an atmosphere of widespread lawlessness at Mabel Bassett, creating a corruptive den for sexual depravity where the guards had free reign to prey upon and commit acts of excessive force against the inmates.

162.    The wanton conduct of Defendants Embry and King alleged in the previous paragraphs reveals that these acts of excessive force by Defendants Juber, Dildine, and Baker were permitted and were consistent with the prison policies, culture, and customs created by Defendants Embry and King.

163.     Defendants Juber, Diline, and Baker were within the course and scope of their employment when the heinous acts set forth in this Second Amended Complaint took place. As a result, Defendants Embry and King, in their official capacities, and the Oklahoma Department of Corrections are liable under the theory of *respondeat superior* pursuant to violations of the Oklahoma Constitution, Art. II, §§ 7 and 9.

164.     The acts of Defendants Embry and King as set forth above were wanton, malicious, and oppressive, thus entitling Plaintiffs to an award of punitive damages.

### INJUNCITVE RELIEF CLAIMS OF FELICIA KOCH, ASHLEY BOLDING, CANDICE BUCHANAN, STACY DIMAS-OLSON, MELISSA NELSON, ELLY WRIGHT, AND CARMILE SULVETTA

165.     Mabel Bassett is the only female prison classified by the United States Department of Justice as having a "high rate" of inmate-on-inmate sexual victimization (15.3%).  *See*, "Sexual Victimization in Prisons and Jails Reported by Inmates, 2011-12, *United States Department of Justice*, p. 12.  In the same survey, 3.4% of inmates at Mabel Bassett reported sexual misconduct by prison staff.  *Id.*, Appendix Table 2, p. 52.  The survey found 1.4% of inmates responding that they had been "physically forced" by a member of staff to participate in sexual misconduct, 2.5% had been "pressured", and 1.5% participated "without force or pressure."  *Id.*, Appendix Table 3, p. 58.  "Non-consensual sexual acts" were reported by 8.5% of inmates and 8.9% of inmates reported "abusive" sexual contacts.  *Id.*, Appendix Table 4, p. 64.  In short, Mabel Bassett is the worst women's prison in the United States for sexual misconduct.

166.     The deliberate indifference of Defendants described above and herein, has created dangerous conditions at Mabel Bassett which, if not enjoined, endanger the physical and emotional wellbeing of Plaintiffs Felicia Koch, Ashley Bolding, Candice Buchanan, Stacy Dimas-Olson,

Melissa Nelson, Elly Wright, Carmile Sulvetta and others by subjecting them to fear of and the increased potential for additional abuse by employees and inmates of Mabel Bassett as described above and herein.

167.    On information and belief, after reasonable investigation under the circumstances, Plaintiffs named in Paragraph 166 allege that Defendants named in Paragraph 166 or their predecessors are legally responsible in some manner for the occurrences alleged in this Second Amended Complaint and unlawfully caused or contributed to the injuries and damages to Plaintiffs as alleged.

168.    At all relevant times, unless otherwise alleged, each Defendant was the supervisor, agent, employee, or subordinate of every other Defendant and acted or failed to act with the knowledge and consent of each of the other Defendants.

169.    The acts and omissions of the Defendants violate the rights of Plaintiffs under the Eighth and Fourteenth Amendments to the Constitution of the United States and under Art. II, §§ 7 and 9 of the Oklahoma Constitution, which entitled the Plaintiffs to compensatory and punitive damages for those violations and injunctive relief to prevent further violations of the Plaintiffs' rights.

170.    Unless the Defendants are restrained by a preliminary and permanent injunction, Plaintiffs will continue to suffer severe, irreparable harm, in that they will be subjected to fear of and the increased potential for additional abuse by employees and inmates of Mabel Bassett as described above and herein.

171.    Plaintiffs have no adequate remedy at law because monetary damages, which may compensate for past violations of their civil rights, will not afford adequate relief for the fear,

humiliation, and risk of injury that a continuation of the conduct of Defendants will have on their civil rights.

172.    Considering the balance of the hardships between Plaintiffs, which amount to sexual abuse and torture, and the hardships of Defendants, which amount at most to inconvenience, injunctive relief is warranted.

173.    Plaintiffs are likely to succeed on the merits because the acts and omissions of the Defendants or their predecessors are violations of the civil rights of Plaintiffs.

174.    Injunctive relief is in the public interest in that it will further the public policy of the state and federal constitutions by reducing or eliminating future sexual abuse and torture of inmates at Mabel Bassett.

175.    Preliminary and permanent injunctive relief should include the following:

        a.      An injunction against allowing male employees to interact with female inmates unless a female employee is present;

        b.      An injunction against employing any person who has a previous history of inappropriate behavior with members of the opposite sex;

        c.      An injunction against understaffing shifts, activities, and locations which allows or facilitates inappropriate contact between male employees and female inmates; and

        d.      An injunction against allowing surveillance cameras and other equipment to be out-of-service for more than twenty-four (24) hours and, during periods when such cameras or equipment are out-of-service, an injunction against allowing male employees to work in those areas without a female employee being actually present.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, Felicia Koch, Amber Blevins, Ashley Bolding, Candice Buchanan, Stacey Dimas-Olson, Nichole Estes, Jessica James, Melissa Nelson, Heather Weber, Elly Wright and Carmile Sulvetta, pray for judgment against Defendants David Juber, Jamie Baker and Gilbert Dildine, jointly and severally; Defendant Millicent Newton-Embry, individually and in her Offical Capacity; Defendant Carla King, individually and in her Official Capacity, and Oklahoma Department of Corrections for both compensatory damages and punitive damages from each Defendant each in a sum in excess of One Hundred Thousand Dollars ($100,000.00) exclusive of costs and interest and attorney's fees, together with the lawful costs, interest, and attorney's fees as provided for by law together with any and all further relief this Court deems just and proper.

Respectfully submitted,

**Taylor, Burrage, Foster, Mallett,**
 **Downs, Ramsey & Russell**
A Professional Corporation

 *s/Bradley H. Mallett*
STRATTON TAYLOR, OBA# 10142
BRADLEY H. MALLETT, OBA # 15810
MARK H. RAMSEY, OBA # 11159
CLINT RUSSELL, OBA # 19209
400 West Fourth Street;
P.O. Box 309
Claremore, OK 74018
918/343-4100
918/343-4900 facsimile
bmallett@soonerlaw.com
***Attorneys for Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of **January**, 2014, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Richard N. Mann, OBA # 11040
Justin P Grose, OBA # 31073
Assistant Attorney General
Oklahoma Attorney General's Office
Litigation Division
313 NE 21st Street
Oklahoma City, OK 73105
405-521-3921
405-521-4518 - fax
Richard.mann@oag.ok.gov
Justin.grose@oag.ok.gov
*Attorney for Defendants*
*Millicent Newton-Embry & Carla King*
*& Oklahoma Department of Corrections*

David W. Lee, OBA #5333
Emily B. Fagan, OBA #22427
LEE LAW CENTER, P.C.
6011 N. Robinson Avenue
Oklahoma City, OK 73118-7425
405-848-1983
405-848-4978 – fax
david@leelawcenter.com
emily@leelawcenter.com
*Attorneys for Officer Gilbert Dildine*

I further hereby certify that on the 21st day of January, 2014 I served the attached document by ___ U.S. Mail, _____ Certified Mail, Return Receipt Requested,_____ faxed, _____ delivered, _____e-mailed to the following, who are not registered participants of the ECF System:

None

*s/Bradley H. Mallett*