IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1) FELICIA KOCH, *et al.*,<br>     Plaintiffs,<br>v.<br>1) OFFICER DAVID JUBER, Individually and as an officer of Mabel Bassett Correctional Center; *et al.*,<br>     Defendants. | Case No: CIV-13-750-HE |

## DEFENDANTS MILLICENT NEWTON-EMBRY, CARLA KING, AND THE OKLAHOMA DEPARTMENT OF CORRECTIONS' MOTION TO DISMISS AND BRIEF IN SUPPORT

Defendants, Millicent Newton-Embry, Carla King, and the Oklahoma Department of Corrections (collectively "Administrative Defendants") respectfully request the Court, pursuant to Fed. R. Civ. P. 12(b)(6), dismiss Plaintiffs' claims for the following justifications:

1. Applicable statutes of limitations bar Plaintiffs' claims;

2. Plaintiffs fail to state a claim upon which relief can be granted for an Oklahoma constitutional violation because Newton-Embry, King, and DOC cannot be held liable for the individual, unsanctioned, and criminal acts of David Juber, Jamie Baker, and Gilbert Dildine (collectively "Rape Defendants") that were committed in bad faith because statutory rape of inmates is outside the scope of employment as a matter of law; and

3. As a result of the lack of factual allegations supporting Plaintiffs' legal conclusion that the Administrative Defendants violated Article II, Section 7 of the Oklahoma Constitution, they have failed to state a claim upon which relief can be granted.

**STATEMENT OF THE CASE**

Plaintiffs bring their 42 U.S.C. § 1983 against the Rape Defendants for "a series of sexual assaults, rapes, forced sodomy, torture and battery brought about by officers and guards at Mabel Bassett in McCloud, Oklahoma over a period of at least several years."[1] *Second Am. Compl.* ¶ 15 [Doc. 30]. Much of the Second Amended Complaint is devoted to describing in detail the individual, criminal actions performed by the Rape Defendants on the Plaintiffs. *Id.* at 8-28. Additional allegations have been added seeking to hold the Administrative Defendants liable for exhibiting deliberate indifference to a substantial risk of harm to the female inmates. *See id.* at 3-8. Also added to the Second Amended Complaint is a request for injunctive relief on behalf of eight of the Plaintiffs. *Id.* at 35-37.

**STANDARD OF REVIEW**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Where the complaint is brought pursuant to 42 U.S.C. §1983, the plaintiff must "plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* at 676. The *Twombly* evaluation requires two prongs of analysis. First, the Court identifies "the allegations in the complaint

---

[1] Plaintiffs' factual allegations do not demarcate the difference between assaults, rapes, forced sodomy, torture, and battery. Therefore, "rape" and "assault and battery" are used interchangeably throughout this brief.

that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 680. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. Only if plausibility is found to exist should the case proceed. *Id.* at 679.

## ARGUMENT AND AUTHORITIES

**I. ALL OF KOCH'S CLAIMS ARE BARRED BY THE APPLICABLE STATUTES OF LIMITATIONS, AND THE OKLAHOMA CONSTITUTIONAL CLAIMS OF BLEVINS, WEBER, NELSON, AND WRIGHT ARE BARRED AS WELL.**

Plaintiffs seek to hold Newton-Embry and King liable for violations of the Eighth and Fourteenth Amendments under 42 U.S.C. § 1983. [Doc. 30, at ¶ 153]. They also seek to hold the Administrative Defendants liable under the Oklahoma Constitution for violations of their procedural due process rights and their right to be free from cruel and unusual punishment. *Id.* at 34-35 (referencing OKLA. CONST. art. II, §§ 7, 9).

Depending on the type of claim, different statutes of limitations apply in this case. Section 1983 claims are governed by the particular state's statute of limitations regarding personal injury actions, *Meade v. Grubbs*, 841 F.2d 1512, 1522-23 (10th Cir. 1988), which in this case is two years, OKLA. STAT. tit. 12, § 95(A)(3) (2011). Claims for a violation of the Oklahoma Constitution require a separate inquiry. When it is clear from the face of the complaint the statute of limitations period has expired, those claims outside the limitations period may be appropriately dismissed as failing to state a claim. *Aldrich v. McCulloch Properties, Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980).

To begin, it should be noted that incarceration is not a legal disability in Oklahoma. *Miskovsky v. Gray*, No. 03-6186, 109 F. App'x 245, 249 (10th Cir. Aug. 27, 2004) (unpublished);[2] *Harper v. Rudek*, No. CIV-11-995-HE, 2013 WL 1688905, at *5 (W.D. Okla. Mar. 4, 2013) (report and recommendation), *adopted by*, 2013 WL 1688935 (W.D. Okla. Apr. 18, 2013). Many statutes of limitations are contained in Chapter 3 of Title 12 of the Oklahoma Statutes. *See* OKLA. STAT. tit. 12, §§ 91-103. Most commonly-used limitations periods are found in Section 95. The statute of limitations that should apply to Oklahoma Constitution claims appears to be a novel issue as it has yet to be discussed by any courts addressing the matter. In this case, however, the limitations period that applies is easy to determine because the Plaintiffs are all inmates. *See* OKLA. STAT. tit. 12, § 95(A)(11). While § 1983 actions rely upon Section 95(A)(3) for their limitations purposes, the federal courts' desire for uniformity that resulted in the use of personal injury statutes of limitation does not apply here. This case involves claims brought under one specific section of the Oklahoma Constitution, and more specifically, by a group of inmates. Thus, the general limitation governing "action[s] for injury to the rights of another," *id.* § 95(A)(3), does not apply over the more specific limitations periods governing actions filed by inmates for "claims for injury to the rights of another," *id.* § 95(A)(11), or actions for assault and battery, *id.* § 95(A)(4).

Specific over general statutes govern when the two may be construed to apply to the same subject matter. *Whitaker v. Hill Nursing Home, Inc.*, 210 P.3d 877, 880 (Okla. Civ.

---

[2] The citation conventions of 10th Cir. R. 32.1(A) apply to references to unpublished cases. Unpublished cases are cited for persuasive value pursuant to 10th Cir. R. 32.1.

4

App. 2009). In *Whitaker*, a decedent's personal representative brought suit against a nursing home for the wrongful death of her grandfather. *Id.* at 878. The statutes at issue in *Whitaker* involved Section 95(A)(1) that is "*generally* applicable to breach of contracts," and Title 76, Section 18 that "*specifically* applies to breach of contract actions brought against a health care provider for injury or death arising out of patient care." *Id.* at 880 (emphasis in original). The question wrestled with by the court was whether the longer, five-year limitations period governed the action because of the existence of a contract between the nursing home and the decedent, or if the more specific statute applied because the suit was a medical negligence action. *Id.* Logically, the court held that the more specific statute applied thus barring the claims because they were not brought within the two-year limitations period. *Id.*

Because the suit has been brought by a group of inmates, the more specific statue governing inmate actions must apply. OKLA. STAT. tit. 12, § 95(A)(11). It places a one (1) year limit on "[a]ll actions filed by an inmate or by a person based upon facts that occurred while the person was an inmate in the custody of . . . the State of Oklahoma . . . includ[ing], but not . . . limited to . . . claims for injury to the rights of another . . . ." *Id.* This section has been previously applied to inmate actions that do not fall within the purview of § 1983 or the Oklahoma Governmental Tort Claims Act. *See Pratt v. GEO Group, Inc.*, 802 F.Supp.2d 1269, 1270-72 (W.D. Okla. 2011) (holding that one-year limitations period applies to inmate who brought medical negligence claim against prison, as opposed to the more general two-year limitations period for medical negligence).

The statute of limitations for such an action was not addressed in *Bosh v. Cherokee County Building Authority* because the plaintiff quickly brought suit against the jailers and the county governmental building authority in just over four months after the incident. 305 P.3d 994, 996 (Okla. 2013). Based on the fact that the excessive force claim is most closely analogous to an assault and battery claim, and therefore more specific than Section 95(A)(3), the one-year statute of limitations for assault and battery claims must apply if the Court does not find the action governed by Section 95(A)(11). *See* OKLA. STAT. tit. 12, § 95(A)(4); *see also Thomas v. Casford*, 363 P.2d 856, 858-59 (Okla. 1961) (applying one-year limitations period to claim that defendant punched plaintiff with his fists).

Two separate statutes of limitations govern this action because of the different theories of liability presented. Every plaintiff in this action alleges they were raped by one of the Rape Defendants during 2012, with the exception of Plaintiff Koch. *See* [Doc. 30, at ¶ 31]. Therefore, all of Koch's claims are barred by both statutes of limitations discussed above to the extent they are brought against the Administrative Defendants. The fact that she previously filed suit in Oklahoma County District Court, *see Koch v. Okla. Dep't of Corrs.*, CV-2012-2781 (Okla. Co. Dec. 18, 2012), does not afford her relief under the Oklahoma savings statute, OKLA. STAT. tit. 12, § 100, because the only party to that suit named in the present is DOC.[3] Koch's only claim against DOC arises under state law, but it is barred by the one-year limitations period. *See* OKLA. STAT. tit. 12, § 95(A)(11).

---

[3] The savings statute only applies if parties named in new lawsuit were named in original. *See Williams v. City of Guthrie*, 109 F. App'x 283, 285-86 (10th Cir. Sept. 8, 2004) (unpublished).

Finally, to the extent the Administrative Defendants have been sued for violations of the Oklahoma Constitution, some of these claims are barred by the one-year limitations period in Section 95(A)(11). Any plaintiff who alleges violations of the Oklahoma Constitution that occurred before July 19, 2013, cannot bring those claims. Thus, a total bar exists for Amber Blevins and Heather Weber, *see* [Doc. 30, at ¶¶ 44, 112], and a partial bar exists for some of the claims brought by Melissa Nelson and Elly Wright, *see id.* ¶¶ 99, 121.

## II. *RESPONDEAT SUPERIOR* LIABILITY UNDER THE OKLAHOMA CONSTITUTION AGAINST THE ADMINISTRATIVE DEFENDANTS[4] IS IMPOSSIBLE IN THIS CASE BECAUSE THE OFFICERS WERE ACTING OUTSIDE THE SCOPE OF THEIR EMPLOYMENT AS A MATTER OF LAW AND IN BAD FAITH.

Tort law regarding *respondeat superior* liability in Oklahoma is scattered across many cases involving private employers, as well as government employers when the Oklahoma Governmental Tort Claims Act is involved. As with private employers, an employer can only be held liable for the actions of his employee if the employee was acting within the scope of his employment and in furtherance of his duties. *Bosh v. Cherokee Cnty. Bldg. Auth.*, 305 P.3d 994, 998 (Okla. 2013). Merely "an assertion that an act is

---

[4] Newton-Embry and King have been improperly named as Defendants in Plaintiffs' claims for violation of the Oklahoma Constitution. "Under the common law doctrine of *respondeat superior* a principal or *employer* is generally held liable for the wilful acts of an agent or employee acting within the scope of the employment in furtherance of assigned duties." *Bosh*, 305 P.3d at 998 (emphasis added); *see also* Black's Law Dictionary 1086 (8th ed. 2004) ("The doctrine holding an employer . . . liable for the employee's . . . acts committed within the scope of the employment . . . ."). Neither Newton-Embry nor King was the Rape Defendants' employer. At most they were co-workers. Therefore, Plaintiffs cannot recover against Newton-Embry and King for an alleged violation of the Oklahoma Constitution under a theory of *respondeat superior* because they were not employers.

accomplished during an employment activity is insufficient to assess liability against the employer *unless the act was done to accomplish the assigned work.*" *N.H. v. Presbyterian Church (U.S.A.)*, 998 P.2d 592, 599 (Okla. 1999) (emphasis added). If, however, the employee is not acting within the scope of his employment, the State cannot be held liable for his conduct because the State is not liable for the acts of employees who are acting in bad faith or with malice.[5] *Fehring v. State Ins. Fund*, 19 P.3d 276, 283 (Okla. 2001) (holding no liability for the State "when, in order to prevail on the particular tort claim sued upon, a plaintiff is required, as a matter of law, to show conduct on the part of a governmental employee that would mandate a determination the employee was not acting in good faith"). An employee will be in the scope of employment "if engaged in work assigned, or if doing what is proper, necessary and usual to accomplish the work assigned, or doing that which is customary within the particular trade or business." *Bosh*, 305 P.3d at 998.

"As a general rule, it is not within the scope of an employee's employment to commit an assault on a third person." *Nail v. City of Henryetta*, 911 P.2d 914, 918 (Okla. 1996); *see also Craig v. City of Hobart*, 2010 WL 680857, at *4 (W.D. Okla. Feb. 24, 2010) (neither assault nor battery can be committed in good faith by the very fact they require *intentional* conduct.). Two exceptions to this general rule exist: (1) "when the act is one which is fairly and naturally incident to the business and is done while the employee is doing the employer's business"; and (2) if the act is done, "however ill-advisedly, with a

---

[5] "Scope of employment" is defined as "performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority . . . ." OKLA. STAT. tit. 51, § 152(12) (2011).

view to further the employer's interest or arises out of an emotional response to actions being taken for the employer." *Tuffy's v. City of Okla. City*, 212 P.3d 1158, 1166 (Okla. 2009). But when only one reasonable conclusion can be drawn from the facts as stated by plaintiff it is appropriate for a court to rule on a scope of employment issue as a matter of law. *Nail*, 911 P.2d at 918. So too here.

There is no question that an assault and battery committed against another or the statutory rape of an inmate is an intentional act committed in bad faith. Also without question is the fact that a rape is not committed to accomplish the assigned work of guarding inmates. It is apparent from the very nature of the two acts that neither is within the scope of employment of a corrections officer. Plaintiffs' absurd statement supporting their scope of employment claim is unpersuasive: "*The rapes and assaults* of Plaintiffs committed by Defendants Juber, Baker, and Dildine were acts of force, punishment, power, control and dominance, *falling within the scope of their duties for which they were hired*." [Doc. 30, at ¶ 160] (emphasis added). Only when the acts committed by a rogue employee are closely related to the business or actions being performed by the employee in furtherance of their master's business do courts find intentional torts to be within the scope of employment.

*Nail* involved a police officer that pushed a handcuffed boy to the ground that resulted in multiple injuries. 911 P.2d at 915. The City of Henryetta argued that the officer acted outside the scope of his employment, *id.* at 916, but the court determined there was a fact question as to whether he intentionally pushed the boy (taking him outside the scope) or was merely negligent, *id.* at 918. Much like other police officer cases, physical

altercations with arrestees are "fairly and naturally incident to the business" or "arise[] out of an emotional response to actions being taken for the employer." *Tuffy's*, 212 P.3d at 1166 (officers, while attempting to remove unruly patrons from nightclub, assaulted other customers).[6] The seminal case establishing liability for assaults—if they fall within one of the two exceptions—is *Rodebush v. Okla. Nursing Homes, Ltd.*, 867 P.2d 1241 (Okla. 1993). There, a drunken employee slapped an Alzheimer's patient, who had a known history of being combative, during a bath. *Id.* at 1243. Ultimately, the court determined the drunken employee was acting within the scope of employment because hospital was in the business of taking care of Alzheimer's patients, Alzheimer's patients are known to be combative, and the drunken employee was carrying out his assigned task (giving the patient a bath) when he slapped the patient. *Id.* at 1246. These cases involve circumstances whereby it is foreseeable that an employee, while engaged in his master's business, may lose his temper and commit an assault. And in police officer cases there is always the possibility that an arrestee will be injured during an arrest.

Nothing changed with the Oklahoma Supreme Court's decision in *Bosh* where jailers assaulted a detainee at the jail's booking desk. 305 P.3d at 996. After the initial assault, the detainee was moved to the showers and then other off-camera areas while the

---

[6] Peace officers acting in the scope of their employment and subsequently using excessive force present much different claims than a prison guard who has sex with an inmate. The use of force in an arrest is not always illegal. *Cf.* OKLA. STAT. tit. 21, § 643 (use of force is not unlawful when public officer is arresting someone). The question of how much force was used and the manner in which it was used will determine whether the officer was inside the scope of employment. *Morales v. City of Okla. City*, 230 P.3d 869, 880 (Okla. 2010). Any employee at a correctional institution that has sex with an inmate, however, is always guilty of statutory rape. OKLA. STAT. tit. 21, § 1111(A)(7). Clearly, sexual acts with inmates, which are criminal in nature, are outside the scope of employment.

assault continued. *Id.* The detainee suffered injuries from the attack that required surgery. *Id.* Again, though these activities by the jailers were outside the scope of their employment and not something their employer would condone, the Oklahoma Supreme Court—without analysis—concluded that a cause of action existed under article 2, section 30. *Id.* at 1000-01. While it mentioned the police officer misconduct cases in a few footnotes, *id.* at 1000 nn.24-27, it did not elaborate and discuss the assault exceptions discussed in *Tuffy's*. *See id.* at 1000-01. But again, as with the discussion involving police officers, it is conceivable that jailers may use excessive force on a detainee if the jailers become agitated during the booking process, which is "fairly and naturally incident to the business." Not so with raping inmates.

The above cases can be easily distinguished when juxtaposed against the Oklahoma Supreme Court's decision in *N.H.*, 998 P.2d 592. There, a minister who had previous allegations of improper relationships with minors against him sexually molested twelve minors. *Id.* at 597. The minors sued the national organization of the Presbyterian Church under a theory of *respondeat superior*. *Id.* No one else was alleged to have committed the acts. *Id.* Assuming the minister was an agent of the national organization, the court found the acts to be outside the scope of employment as a matter of law. *Id.* at 598-600 ("Ministers should not molest children."). The court found that "[n]o reasonable person would conclude that [the minister's] sexual misconduct was within the scope of employment or in furtherance of the national organization's business," and that the minister "acted for his own personal gratification rather than for any [business] purpose." *Id.* at 599; *see also Harmon v. Cradduck*, 286 P.3d 643, 650 n.21 (Okla. 2012) ("Because

11

Cradduck's alleged theft of the ring would have been an act outside the scope of employment, the resulting tort claim would not be governed by the GTCA, and would not be subject to the notice provisions of the act.") The Rape Defendants were, of course, not hired to perform sexual acts on inmates. *See N.H.*, 998 P.2d at 599.

Undoubtedly, when the act committed by the employee is so outside the scope of employment that no reasonable juror could conclude that it was for the benefit of the employer's business the court must conclude as a matter of law that the employee was acting outside the scope of his employment. *See Nail*, 911 P.2d at 918; *see also Arnold v. Smallwood*, 2012 WL 1657045, at *13 (N.D. Okla. May 10, 2012) (assault and battery cannot be committed in good faith). While the reasoning used in the cases discussing police officer assaults can be followed, it is unimaginable how the rapes of female prison inmates—a crime—could be found to be within the scope of employment.

The Rape Defendants' acts can be equated to those of the minister in *N.H.* They are much more distant than the acts of police officers in *Nail* and *Tuffy's* or the employee in *Rodebush*. Simply because Plaintiffs allege the Rape Defendants were "on duty, [and] in uniform," *Second Am. Compl.* ¶¶ 5-7, ECF No. 30, does not mean their rapes were committed while in the scope of employment, *N.H.*, 998 P.2d at 599 ("[A]n assertion that an act is accomplished during an employment activity is insufficient to assess liability against the employer *unless the act was done to accomplish the assigned work*." (emphasis added)). Because Plaintiffs cannot seriously argue the Rape Defendants' actions were done to accomplish their assigned work, the Administrative Defendants cannot be held liable for the criminal actions of the Rape Defendants. *See White v. City of Tulsa*, No.

13-CV-128-TCK-PJC, 2013 WL 5774018, at *3-4 (N.D. Okla. Oct. 24, 2013) (holding actions of police officers that included planting of evidence and falsifying testimony at preliminary hearing precluded *Bosh* claims against employer because those actions were outside the scope of employment). No reasonable juror would conclude that the criminal act of rape is within the scope of employment because prison guards should not rape inmates. *See N.H.*, 998 P.2d at 598-600. Accordingly, Plaintiffs' claims under Article II, Section 9 of the Oklahoma Constitution must be dismissed.

### III. PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR A VIOLATION OF ARTICLE II, SECTION 7 OF THE OKLAHOMA CONSTITUTION.

Throughout their Second Amended Complaint, Plaintiffs accuse the Rape Defendants of violating their due process rights under Article II, Section 7 of the Oklahoma Constitution. *See, e.g.,* [Doc. 30, at. ¶ 41]. In the heading preceding their Oklahoma constitutional claims against the Administrative Defendants Plaintiffs only identify Article II, Section 9 as their theory for recovery. *Id.* at 34. The relief sought in that section, however, seeks to hold the Administrative Defendants for violations of Sections 9 *and* 7 of the Oklahoma Constitution. *Id.* ¶ 163.

To the extent the inclusion of Section 7 is not a scrivener's error, Plaintiffs have failed to state a claim upon which relief can be granted for a violation of Section 7. That section provides: "No person shall be deprived of life, liberty, or property, without due process of law." OKLA. CONST. art. 2, § 7; *see also Daffin v. State ex rel. Okla. Dep't of Mines*, 251 P.3d 741, 747 ("The due process clauses of the United States and Oklahoma Constitutions provide that citizens cannot be deprived of their rights to life, liberty or

property without first receiving notice and a meaningful opportunity to be heard."). Nowhere in the Second Amended Complaint do they identify an interest—life, liberty, or property—of which they were deprived. Furthermore, nowhere in the voluminous allegations exists any complaint by the Plaintiffs that they were denied notice, a meaningful opportunity to be heard, or that they were denied any procedural due process whatsoever. Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Plaintiffs reference "acts of force," [Doc. 30, at ¶ 160], and claim they were subjected to "excessive force," *id.* ¶¶ 161-62, but do not identify any facts that would support a claim under Article II, Section 7 of the Oklahoma Constitution. Although it is assumed Section 7's inclusion was a scrivener's error, an intentional inclusion of Section 7 results in Plaintiffs failing to state a claim upon which relief can be granted because they have identified no facts in support of their claim. Instead, it appears to have been tossed in as a matter of course resulting in an insufficient and bare legal conclusion necessitating its dismissal.

## CONCLUSION

The applicable statutes of limitations for § 1983 claims bar all of Koch's claims. Additionally, Oklahoma's statute of limitations for inmate actions bars the claims of Blevins, Weber, Nelson, and Wright brought pursuant to the Oklahoma Constitution. Because the actions of the Rape Defendants were clearly outside the scope of their

employment and committed in bad faith, the Administrative Defendants cannot be held liable for their actions under the Oklahoma Constitution.

Respectfully submitted,

/s/ Justin P. Grose
**RICHARD MANN, OBA #11040**
**JUSTIN P. GROSE, OBA #31073**
Assistant Attorney General
Oklahoma Office of the Attorney General
Litigation Division
313 NE 21st Street
Oklahoma City, OK 73105
T| (405) 521-3921
F| (405) 521-4518
Richard.Mann@oag.ok.gov
Justin.Grose@oag.ok.gov
*Attorney for Defendants Millicent Newton-Embry, Carla King, and the Oklahoma Department of Corrections*

# **CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of February 2014, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing. I further that a true and correct copy of the foregoing document was sent via the ECF System to the following persons who are registered participants:

| | |
|---|---|
| Bradley H. Mallett | David W. Lee |
| Clinton D. Russell | Emily B. Fagan |
| Mark H. Ramsey | LEE LAW CENTER, P.C. |
| Stratton Taylor | 6011 N. Robinson Ave. |
| TAYLOR BURRAGE FOSTER MALLETT DOWNS RAMSEY & RUSSELL | Oklahoma City, OK 73118-7425 |
| PO Box 309 | Email: david@leelawcenter.com |
| Claremore, OK 74018-0309 | Email: email@leelawcenter.com |
| Emails: bmallett@soonerlaw.com | *Attorneys for Defendant Gilbert Dildine* |
| Emails: crussell@soonerlaw.com | |
| Emails: mramsey@soonerlaw.com | |
| Emails: staylor@soonerlaw.com | |
| *Attorneys for Plaintiffs* | |

/s/ Justin P. Grose
**Justin P. Grose**