# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

1) FELICIA KOCH, *et al.,*

              Plaintiffs,

v.

1) OFFICER DAVID JUBER, Individually and as an officer of Mabel Bassett Correctional Center; *et al.,*

              Defendants.

Case No: CIV-13-750-HE

## OBJECTION TO MOTION TO COMPEL NON-PARTY COMPLIANCE WITH SUBPOENA AND BRIEF IN SUPPORT

Comes now the Oklahoma State Department of Corrections (DOC) objects to the Motion to Compel Non-party Compliance with Subpoena. In support hereof DOC states as follows:

1. Production of the majority of documents responsive to the subject subpoena has been made. Plaintiffs and their counsel take issue with the method of copying or scanning and the expense required for such copying or scanning. Regardless of Plaintiffs duplicitous position in its motion to compel, that the cost issue is a "red herring," DOC submits that it is the sole issue before the court as the great majority of records demanded have been sitting at the Lincoln Blvd. DOC headquarters for two months waiting for Plaintiffs counsel to agree to pay for the expense of copying.

2. Plaintiff's counsel was offered the opportunity to review records on or about January 29, 2015, to ascertain which documents needed to be copied from various files to help reduce the amount of expense associated with copying. He declined to do so after a short cursory review. Instead of reviewing, counsel simply demanded that DOC provide copies of everything. Plaintiff's only concession in the copying process was to have DOC send all records to an independent copying company subject to a confidentiality agreement. DOC declined to agree due to the subject matter of the records and the privacy rights of individuals named therein and security issues of the facility.

3. After being advised by Plaintiff's counsel that he would not review files to select records for copying instead of wholesale copying DOC promptly advised him that he would be charged for the expense of copying before additional documents would be provided. (see Plaintiff's exhibit 4, attached to the motion to compel) Plaintiff's counsel refused to agree to pay for copying.

4. Although, Plaintiff's was advised on January 30th, 2015, that he would have to pay for copying, he waited for a month and a half until March16th to file his motion to compel. The undersigned had encouraged him to file as soon as possible to obtain a ruling from the court in regards to the burden of expense.

5. As the Court directed, the undersigned and Plaintiff's counsel, Mr. Mallett, conferred at length by phone on March 24th to discuss issues in regards to the Motion to compel. As the Court will note from the Joint Statement of the Parties

to be filed in this matter (a rough draft of which has been reviewed by the undersigned), the bulk of the records sought to be produced were either produced at the meeting to review documents at the DOC headquarters on January 29, 2015, or have been gathered since that time. Mallett chose to review only a portion at that time and has not requested additional review.

6. The specific requests and their status are set out in the Joint Statement, so for the sake of brevity, they will not be set out again in this response. Instead, DOC will summarize the following:

    a. Plaintiffs have indicated that DOC must provide a privilege log on the request items, # 2, 3, 8, and in part in regards to # 4. The undersigned has advised Mr. Mallett that to his knowledge, *no* documents have been withheld. DOC has redacted names from incidents reports and investigative files due to relevancy or those which would be subject to the Prison Rape Elimination Act (PREA).

    b. Plaintiffs have requested government audits or inspections of the Mabel Bassett prison and the undersigned has advised Mallett that the audit/inspection done in late 2014 has not been provided by the entity conducting the audit. That entity is that American Correctional Association and the audit was done at the request of DOC. Mallett has been advised that the audit or report, howsoever named, will be provided when it is received by DOC.

c. Numerous responsive documents were compiled and produced by DOC for Mr. Mallett's inspection at the DOC headquarters consistent with the Federal Rules of Civil Procedure that provide for production as maintained. FRCP 34(b)(E)(i) As indicated in the Plaintiff's motion to compel, DOC has provided copies of Bates stamped documents numbering 1 through 774 as well as a disc with the audio recorded investigative interviews of the Plaintiffs as requested at no charge to the Plaintiffs or their counsel. These copies were made either by DOC or at the office of the undersigned at their expense.

d. The problem in this matter arose when Mr. Mallett declined to review other voluminous documents, such as his own clients field files when they were produced at the DOC headquarters, and instead demanded that DOC copy them in mass and provide them to him. His only concession was to have DOC send them to an outside copying company at his expense. DOC declined to do this due to the privacy considerations on individuals named within those files as well as out of concern for documents critical to the secure operations of the facility.

e. The great majority of the records sought have been available for his review during the extent of the time Mallett has taken to prepare and file a motion to compel even though he was advised by the undersigned that short of his agreement to pay for the copying, that he should seek a court

order in regards to the expense allocation. Instead, he has taken a month and a half to seek court intervention, and now seeks to turn the delay issue on its' head by claiming that it is entirely the fault of DOC to produce. It is even claimed that he has been denied access to files for the entirety of this litigation for 2 years starting with open records requests in April of 2013. Even a cursory review of the Court's own docket indicates any delay in this matter has been largely precipitated by Plaintiffs inability to get the DOC and other Defendants served with process and an inordinate amount of time to respond to motions to dismiss which were ultimately successful in large part. Plaintiff's initially filed this lawsuit on July 19, 2013. It took counsel almost four months to serve any defendants. (Doc. # 11, 12, 13 and 14). After this office filed a motion to dismiss, and two motions for either leave, or an extension to extend their response time by almost a month and a half, Plaintiffs filed their Second Amended Complaint. (Doc. # 26, 28, and 30). When faced with another motion to dismiss, Plaintiff's counsel requested two more extensions of time to respond from March 14, 2014 through April 28th, 2014. (see Doc. # 42, 46, and 49). It is repugnant to suggest that Plaintiffs have been denied records for two years when in fact the Plaintiffs or their counsel have set on their hands for most of that time. If the Plaintiffs were unsatisfied with

5

the open records responses they could have filed suit in State court as it is provided for by the Open Records Act.

f.  DOC was dismissed from this lawsuit pursuant to a motion to dismiss and was represented by the undersigned. Any present claim by Plaintiff or their counsel that there is some conflict of interest, (which has never been suggested by Mallett prior to the motion to compel), by the undersigned in the discovery dispute is nothing short of a ruse to suggest some impropriety on the part of the undersigned.

g.  Rhonda Langley was responsible for requesting most of the production request s except for the field files. The most time consuming was the production of the Serious Incident Reports (SIR) and the Internal Affairs Reports (IA). The office of the Inspector General (formally Internal Affairs) had to search their database which only began in 2011 for SIR/IA reports from MBCC that involved assault, battery, sexual misconduct, coercion, intimidation, rape and/or harassment. IG was able to identify 80+ reports from their database. IG then had to print the reports, and then Rhonda Langley has to scan the reports (which could only be done in groups of 50+ pages due to the limited capacity of the server), then redact all of the identifiers from the reports. She has worked an additional 14 hours in one week redacting. The SIR's consisted of approximately 484 pages and the IA Reports consisted of approximately 611 pages.

A request was made for the plaintiff's medical records. The medical records measure approximately 29 inches of paper. A ream of paper (500 pages = 2 inches) which would be approximately 7250 pieces of paper for medical records.

In regards to the request for the offender field files, the offer was for plaintiffs' attorney to review the files and mark for copying specific pages. He requested the entire file be copied and produced to him. The field files are averaging 3 - 5 inches thick, the least amount would be 27 inches of paper for about 7000 pages with the most being 45 inches of paper for about 11,000 pages. The documents in the field files may have staples, is not all 8.5 x 11, most pages have to be copied one page at a time. Numerous documents are legal size. The time necessary to copy each file will be extremely labor intensive. The staff of the General Counsel's Office is 4 attorneys, 1 administrative assistant and 1 legal assistant.

## **BRIEF IN SUPPORT**

Federal Rules of Civil Procedure 26 and 45 provide that information sought by discovery must be calculated to lead to admissible evidence. Rule 26(b)(1) provides, in pertinent part that, "Parties may obtain discovery regarding any nonprivileged matter that

is relevant to any party's claim or defense . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Plaintiffs are entitled to relevant information to pursue their lawsuit. What they are not entitled to is to require the DOC to mass copy documents, preliminarily approximated at $3,000.00 dollars of copying expense, not including manpower, and then decide what they think is relevant. Plaintiff's counsel was advised to come review documents instead of DOC making wholesale copies. That is consistent with the Federal Rules of Civil Procedure. FRCP 34(b)(2)(E)(i) provides for production of documents as they are maintained in the usual course of business. Not only was this done, DOC provided a legal assistant employee, Rhonda Langley to sit down with Mr. Mallett, and the undersigned to explain and review the documents. As pointed out above, Mallett chose to review only a portion of the records <u>produced</u> and instead demanded wholesale copies of all responsive documents. When he was advised that the expense for his client field files above would be $3,000.00, he declined to return to review then to limit pages to be copied. He also declined to pay for the copying expenses. The Federal Rule of Civil Procedure Handbook (2013; McKee, Jenssen, & Corr at p. 877) indicates.…"The producing party is not required to make copies of the documents, just make them available for inspection." Citing *Meza v. Morgan State University*, __F.Supp.2d__ (D.Md.2011), in fact more commentary from those same authors is directly ne point to this situation. "..the requesting party may inspect the produced documents before coping in order to avoid duplicative copying of documents, already in the requesting parties possession (P.887). DOC would

8

suggest that should also entail avoiding copying of documents containing information that is not relevant or already in the public record. (ie., Plaintiffs visitation records, time credit records, and judgment and sentencing records from state courts.) Counsel was unwilling to do any such review. As the affidavit from Rhonda Langley indicates, DOC does not have any staff whose sole job is to copy documents for Plaintiff.

DOC, the subject of numerous and notable lawsuits such as challenges to the lethal injection protocol for example, are short-handed and inadequately funded to act as a copying agency for Plaintiff in lawsuits.

Regardless of Plaintiff's continuation that the issue is not related to expenses, it is without question the core of the problem. It is not the responsibility of DOC to produce volumes of documents to a lawyer, so he may review them at his leisure, at his office in Claremore, instead of reviewing them in Oklahoma City.

It is clear that the preprimary motivation by this motion to compel is to shift <u>all</u> the expense to DOC for copying while leaving non to the Plaintiffs. If the delay in seeking an order was not an outright strategy of Plaintiff, its effect is to give the appearance that DOC has unduly delayed the process when documents have been available for review for weeks now.

s/Richard N. Mann  
**RICHARD MANN, OBA #11040**  
**JUSTIN P. GROSE, OBA #31073**  
Assistant Attorney General  
Oklahoma Office of the Attorney General  
Litigation Division  
313 NE 21st Street  
Oklahoma City, OK 73105  
T| (405) 521-3921  
F| (405) 521-4518  
Richard.Mann@oag.ok.gov  
Justin.Grose@oag.ok.gov  
*Attorneys for Defendants Millicent Newton-Embry and Carla King*

## **CERTIFICATE OF MAILING**

This is to certify that on the 25th day of March, 2015, a true and correct copy of the above and foregoing was electronically transmitted to the Clerk of the Court using the ECF System for filing and transmitting of a Notice of Electronic Filing to the following ECF registrants and interested parties:

Mr. Brad H. Mallett  
TAYLOR, FOSTER, MALLETT, DOWNS,  
    RAMSEY & RUSSELL  
400 West Fourth Street  
P.O. Box 309  
Claremore, Oklahoma 74018  
BMallett@soonerlaw.com  
*Attorney for Plaintiffs*

/s/Richard N. Mann  
Richard N. Mann